807 So.2d 1156 (2002)
STATE of Louisiana, DEPARTMENT OF SOCIAL SERVICES, SUPPORT ENFORCEMENT SERVICES, In the Interest of A.M., Minor Child of Tiffany McGary
v.
John TAYLOR.
No. 2000 CA 2048.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
*1158 Walter P. Reed, Leigh Anne Wall, Office of District Attorney, Covington, for Plaintiff-Appellee State of Louisiana, Through Department of Social Services, Support Enforcement Services.
John O. Braud, Braud & Braud, Independence, for Defendant-Appellant John Taylor.
Before: CARTER, C.J., PARRO, and CLAIBORNE,[1] JJ.
PARRO, Judge.
John Taylor appeals a judgment denying his request for a reduction in child support payments, upholding the recommendations of a hearing officer concerning those payments, and finding him in contempt of court for failing to make payments previously ordered by the court. After a thorough review of the record and applicable law, we reverse, render in part, and remand.

FACTUAL AND PROCEDURAL BACKGROUND
Taylor had an intimate sexual relationship with Tiffany McGary during 1995, and on July 19, 1996, Anissa McGary was born. Taylor and McGary were not married; in fact, at the time of their relationship, Taylor was married to someone else. McGary requested assistance from the Louisiana Department of Social Services, Support Enforcement Services (the Department), and on June 12, 1997, the Department filed a petition to establish paternity and obtain support for Anissa.
No answer was filed, and a preliminary default was entered September 11, 1997. After a number of continuances, a hearing officer conducted a hearing on June 26, 1998. Taylor and McGary were present. Based on information provided by them and on blood test results showing a 99.9994% probability that Taylor was Anissa's father, the hearing officer recommended to the district court that Taylor be found to be Anissa's father and ordered to: (1) pay child support in the amount of $554 per month, plus a 5% administrative fee, effective June 15, 1997; (2) pay $200 per month, plus a 5% administrative fee, toward $5,648 in arrearages owed as of June 15, 1998;[2] (3) provide medical support if the mother became unable to provide it; and (4) pay $110 in court costs and $156 for the blood tests. The hearing officer also recommended entry of an income assignment order. Taylor filed a handwritten "appeal" to the district court of the *1159 hearing officer's findings and recommendations.
Following several continuances, a hearing on Taylor's request for review was set for December 18, 1998. Taylor did not appear, and the court dismissed his appeal and ordered that the hearing officer's recommendations be made the judgment of the court. Taylor asked for a new hearing based on the lack of notice to him of the scheduled hearing; his request was denied by the court. A judgment confirming the default and incorporating the hearing officer's findings and recommendations was signed March 10, 1999, and was not appealed.
On July 14, 1999, Taylor filed a rule to show cause why child support should not be decreased; it was set for hearing on September 3, 1999. On August 10, 1999, the Department filed a contempt rule based on Taylor's failure to pay the court-ordered child support; it was also set for September 3, 1999. On that date, the hearing officer continued the contempt hearing without date, finding the motion had not been served on Taylor.[3] Taylor asked that a compromise agreement he and McGary had confected be recognized and that his support obligation and arrearages be reduced accordingly. The Department had not participated in the compromise, and after receiving testimony and documentary evidence, the hearing officer refused to accept the compromise and modify the child support.[4] However, the hearing officer did order the Department to give Taylor credit against the arrearages for two and one-half months during which he and McGary had lived together, as well as for some payments he had made directly to her during that period. Taylor was ordered to continue paying $200 per month, plus the 5% administrative fee, toward $12,948.85 in arrearages, which were made executory.[5] A judgment incorporating the hearing officer's recommendations was signed September 15, 1999; Taylor's motion for new trial and/or appeal to the district court was denied November 4, 1999, and the judgment was not appealed to this court.
The Department re-filed its rule for contempt on November 5, 1999, and it was set to be heard on January 14, 2000. On January 13, Taylor filed another motion to decrease his ongoing child support obligation and the arrearages, which was also set for January 14. The matters were continued until February 23, 2000. On that date, with Taylor and McGary present, the hearing officer found Taylor was in contempt of court for non-payment and recommended three months imprisonment, which could be avoided by Taylor's payment of $1425 by March 22, 2000. Finding no change in circumstances, the hearing officer again denied Taylor's request for modification, leaving his monthly support payments at $554, plus a 5% administrative fee. The arrearages were shown as $14,642.31,[6] and the $200 per month payments *1160 for arrearages were continued. Taylor was ordered to pay additional court costs of $150 by April 12, 2000.
Taylor asked for a court hearing concerning the hearing officer's findings and recommendations, which was ordered. On March 3, 2000, the district court held a hearing at which Taylor, McGary, and a Department employee testified and documentary evidence was submitted. The court took the matter under advisement and on March 23, 2000, signed a judgment denying Taylor's request for a modification in his payments and again making the hearing officer's recommendations, including the contempt finding and penalty, the judgment of the court. This appeal followed.
In this appeal, Taylor claims the trial court abused its discretion by: (1) refusing to find a change of circumstances; (2) imputing earnings to him beyond what was established by the evidence and in the absence of a finding of voluntary underemployment; (3) finding him in contempt; and (4) refusing to give him credit for child support he was paying for his eighteen-year-old son who was enrolled full-time in a GED program.

APPLICABLE LAW
The authority for the Department's action in this case is provided by Louisiana Revised Statutes 46:236 through 46:236.16.[7] Under these statutes, whenever the Department is providing certain public welfare and assistance services, the Department may take direct civil action, including an action to establish filiation, against an alleged biological parent of a child and may obtain an order, judgment, or agreement of support for the child against the responsible person. A separate and distinct cause of action in favor of the Department is created by these provisions. See LSA-R.S. 46:236.1(F)(1); State ex rel. Munson v. Washington, 32,550 (La. App. 2nd Cir.12/8/99), 747 So.2d 1245, 1247; State ex rel. CTG v. Ball, 26,841 (La.App. 2nd Cir.4/5/95), 653 So.2d 224, 225-26. Upon entry of any court order for the establishment or modification of support, the court must order an immediate income assignment, by which any employer of the responsible parent can be ordered to deduct from the parent's income the portion of the support payments subject to seizure and remit those funds to the Department. See LSA-R.S. 46:236.3(B)(1) and (E).
An expedited process to establish paternity and enforce support has been established, whereby hearing officers must be appointed by the court to hear paternity, support, and related matters brought by the Department. See LSA-R.S. 46:236.5(C)(1). The hearing officer acts as the finder of fact and makes recommendations to the court concerning the establishment and modification of support, collection methods, enforcement of support, and paternity. See LSA-R.S. 46:236.5(C)(3). Among other things, the hearing officer may conduct hearings, take testimony, recommend punishment by the court for contempt, make a record of the hearings, and present a factual summary and written recommendation to the court concerning the disposition of the matter. See LSA-R.S. 46:236.5(C)(4). The hearing officer's recommendation must include a statement of the pleadings, the findings of fact and law, and a proposed judgment. See LSA-R.S. 46:236.5(C)(5). Although support enforcement *1161 cases are a distinct cause of action, the courts use the child support guidelines in Louisiana Revised Statutes 9:315-315.15 (the Guidelines)[8] to determine an appropriate amount of child support in actions by the Department. State ex rel. Gilbert v. Gilbert, 34,203 (La. App. 2nd Cir.12/20/00), 775 So.2d 1182, 1185.
Two provisions address the remedy for a party who does not agree with the recommendations of the hearing officer. Under Section 236.5(C)(6), a party may file an exception to the findings of fact or law of the hearing officer, and a contradictory hearing must be held by the court. The court may accept, reject, or modify in whole or in part the findings of the hearing officer, may receive additional evidence at the hearing, or may remand the proceeding to the hearing officer. See LSA-R.S. 46:236.5(C)(6). Under Section 236.5(C)(8), if the defendant disagrees with the finding of the hearing officer regarding either the establishment of paternity or the establishment and enforcement of support, he is entitled to a de novo review of the findings of the hearing officer by a court of competent jurisdiction. See LSA-R.S. 46:236.5(C)(8).
A party seeking modification of a child support award bears the burden of proving that a change in circumstances has occurred. Once the moving party proves a change in circumstances, a presumption exists that the support obligation must be modified. The burden then shifts to the other party to disprove the change or otherwise overcome the presumption. Barrios v. Barrios, 95-1390 (La.App. 1st Cir.2/23/96), 694 So.2d 290, 293, writ denied, 96-0743 (La.5/3/96), 672 So.2d 691. As clarified by the supreme court in Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762, 769-70, the party seeking modification need not prove a substantial change in circumstances, but only a change sufficient to justify an increase or decrease in child support. What constitutes such a change in circumstances is determined on a case-by-case basis and depends on the particular facts adduced. Hudnall v. Hudnall, 00-0330 (La.App. 1st Cir.5/11/01), 808 So.2d 641, 644. However, when the Department is providing support enforcement services, a change in circumstances exists only when a strict application of the Guidelines would result in at least a twenty-five percent change in the existing child support award. See LSA-R.S. 9:311(C)(1); Glorioso v. Glorioso, 99-3222 (La.App. 4th Cir.11/15/00), 776 So.2d 536, 541, writ denied, 01-0544 (La.4/20/01), 790 So.2d 640. The court may not cancel any accrued arrearages unless the Department has investigated and determined there is no reasonable possibility of collecting those arrearages. See LSA-R.S. 46:236.1(I)(1); State ex rel. Young v. Jennings, 00-0814 (La.App. 4th Cir.6/27/01), 790 So.2d 750, 753.
A person who violates the terms of a court order issued pursuant to the support enforcement provisions of Title 46 may be summoned to appear and show cause before the proper court why he or she should not be held in contempt of court. See LSA-R.S. 46:236.6(A). Neither equity nor practical inability to pay allows a parent to avoid paying his or her share of the child support obligation when the inability arises solely from that parent's own neglect and failure. Brown v. Taylor, 31,352 (La.App. 2nd Cir.2/26/99), 728 So.2d 1058, 1061. To find a person *1162 guilty of constructive contempt, it is necessary to find that he or she violated the order of court intentionally, knowingly, and purposely, without justifiable excuse. Leger v. Leger, 00-0505 (La.App. 1st Cir.5/11/01), 808 So.2d 632, 635. In the context of delinquent child support, the court must determine that disobedience to the court's order for support is willful or is a deliberate refusal by the parent to perform an act which was within the power of the parent to perform. Lutke v. Lutke, 33,001 (La.App. 2nd Cir.2/01/00), 750 So.2d 512, 518.
If the court finds the accused guilty of contempt for failure to comply with the previous judgment, that party may be punished by imposition of a sentence of imprisonment for not more than ninety days or a fine of not more than five hundred dollars, or both. See LSA-R.S. 46:236.6(B)(1) At the court's discretion, the sentence may be suspended upon payment of the total amount owed plus court costs, or on the Department's recommendation, upon payment of a lesser amount plus attendant court costs. See LSA-R.S. 46:236.6(B)(1) and (2). In addition to finding the responsible party in contempt of court, the court must render judgment in favor of the applicable payee for the amount of unpaid support plus attendant court costs. Such a judgment has the same force and effect as a final judgment for money damages against the responsible party, and becomes executory upon its rendition, subject to the delays for filing a motion for new trial or appeal. See LSA-R.S. 46:236.6(C).
On appeal, a trial court's child support order will not be reversed except for abuse of discretion. State ex rel. Penn v. Penn, 97-1269 (La.App. 1st Cir.5/15/98), 712 So.2d 625, 627. However, as in any other case, on appellate review of a trial court's factual findings, those findings of fact are subject to the manifest error/clearly wrong standard of review. See State, Dep't of Soc. Services v. Jackson, 98-697 (La.App. 5th Cir.1/26/99), 726 So.2d 479, 481.

REVIEW OF THE EVIDENCE
To evaluate Taylor's claim that the district court abused its discretion, this court must examine the meager evidence in the record to see if Taylor carried his burden of showing a change in circumstances, such that a reduction in his child support obligation was warranted. We note that our ability to evaluate this case is undermined by serious evidentiary deficiencies in the record. The Guidelines were used inconsistently although they formed the basis of the support calculations, there were no verified income statements from the parties, no documentation at all concerning McGraw's income, and no tax statements other than Taylor's 1999 federal tax return. See LSA-R.S. 9:315.2(A). The evidentiary hearings before the hearing officer were not transcribed and the hearing officer's handwritten notes are not always legible and certainly do not comply with the statutory requirements for findings and recommendations to the court. See LSA-R.S. 46:236.5(C)(5). The method of computing the arrearages was not documented at any point and, at two of the hearings, the outstanding balance of the arrearages was apparently derived by osmosis or divination, as there is no indication that a Department representative appeared to testify or to present documents concerning the amount owed. Finally, other than testimony about Taylor's last five months of payments, there is absolutely no payment history in this record. Within these constraints, we can glean the following information.

Establishment of Paternity and Initial Child Support
Taylor is a registered nurse. In June 1998, at the first hearing to establish Taylor's paternity and fix his child support *1163 obligation, the hearing officer found he was employed at a health care facility earning an annual salary of $48,000.[9] Because of his relationship with McGary, Taylor's marriage had ended in divorce, and he had purportedly been ordered by the court to pay $700 per month child support for each of his other two minor children.[10] The hearing officer adjusted his monthly gross income in accord with the Guidelines to account for this obligation to his other children, but made no adjustment for court-ordered alimony payments to his ex-wife, although the Guidelines include such an adjustment. Taylor's child support obligation was set at $554 per month; arrearages were based on a year of unpaid child support, adjusted for $1000 Taylor had paid directly to McGary. The December 1998 judgment incorporating the hearing officer's recommendations was not appealed and is a final judgment.[11]

First Request for Reduction in Child Support
Taylor's first attempt to have his child support obligation and arrearages reduced was heard on September 3, 1999, and was based primarily on the compromise that he and McGary had confected while they lived together, by which they agreed to reduce the arrearages and child support obligation.[12] Because the Department had not participated in this compromise, the hearing officer did not accept it.[13] The hearing officer did not believe Taylor's income had decreased due to changes in his job situation and recommended against modifying Taylor's support obligation.[14] Although the record of this hearing again contains no evidence concerning arrearages, the hearing officer found the arrearages at this time were $12,948.85, which were to be made executory. On September 15, 1999, the district court accepted these recommendations and declared them to be the judgment of the court. Despite the fact that Taylor's motion for a new trial or appeal specified certain findings of fact and conclusions of law that he contested, the motion for a hearing by the court was denied.[15] Taylor did not appeal the judgment to this court.

Second Request for Reduction in Child Support
Taylor's employment situation had changed effective August 30, 1999, when *1164 Phases,[16] the health care facility where he worked, was sold, and the new owners eliminated his full-time position. Subsequently, he continued to work at Phases as an independent contractor on an "as-needed" basis, and also did part-time "consulting" at other places when he could. When served with the renewed motion for contempt, Taylor again sought a reduction in the continuing support obligation and the arrearages, based on his changed financial status. With reference to the contempt motion, the hearing officer's notes from February 23, 2000, state, "Father has never made full payment since hearing in 9/99," and recommended imprisonment for three months, which Taylor could avoid by paying $1425 within thirty days. The notes indicate that the hearing officer found Taylor's claims concerning his employment circumstances were "inconsistent and contradicted" by his own testimony and evidence. The hearing officer concluded Taylor was earning $20 per hour working 10-15 hours per week at Phases and was making an additional $2000 per month from "consulting" work. The notes from the hearing show that Taylor and his ex-wife had reconciled; Taylor was living with her and his son and daughter, paying the house note, and paying her reduced child support of $300 per child.[17] However, the hearing officer determined that his son was 18 years old and, although enrolled in a GED program, did not qualify as a full-time secondary education student. Therefore, the hearing officer did not adjust Taylor's gross income to account for his son's child support, and determined again that Taylor was not entitled to any reduction in his child support for Anissa.

District Court Hearing
This time Taylor's request for a full hearing before the district court was granted, in accord with the applicable statutes. McGary testified that she was still making the same amount of money as in September 1999, when the previous hearing was held, and had the same expenses for child care and health insurance. However, she also stated that she had a three-month-old son as a result of a new relationship with a new "fiancé," Willard Fairly. Fairly was paying her approximately $50 per week to help support their child and had given her an additional $200 since the child's birth.
Martha Drago, a support enforcement specialist with the Department, said Taylor's arrearages as of the March 3, 2000 hearing date were $14,642.31. She did not fully explain the computation of this amount and produced no documents showing how credits and payments, if any, had been applied. Drago also said the Department's records showed payments from Taylor of $285.71 per month in October and December 1999 and in January and February 2000. She stated Taylor was making $300 monthly payments by postal money order, which included the 5% administrative fee.[18] According to Drago, the last wage information the Department had was from the first quarter of 1999, showing Health Link Home Care Services had paid Taylor $9,833 and Sentergy Home Health Care, Inc. had paid him $294. She also reported a phone call made to Phases by another Department employee *1165 in November 1999, when Taylor had answered the phone and said he was now working wherever and whenever he could as an independent contractor.[19] Taylor had also told the caller he had been paying child support every month, even though the Department's records did not reflect any payment for November 1999.
Taylor testified that he was still working as a registered nurse, but as an independent contractor. He said he worked at Phases about 10 to 15 hours per week making $20 per hour and also worked about 20 to 25 hours per week doing home care, for which he earned $800 to $1200 per month.[20] He estimated his total income as about $2000 per month, and said he did not tell the hearing officer his additional income from "consulting" was $2000 per month, as the hearing officer's notes reflected. Taylor explained that he did not resign from Phases, but lost his full-time employment when new owners came in, and was currently working there "on a PRN basis." Taylor also said that although he still had his license as a registered nurse, he had not been able to get full-time employment, despite having applied at four or five health care facilities "this year"[21] and several others in 1999.[22] Taylor confirmed the accuracy of the first-quarter 1999 income shown on the Department of Labor report, which had been summarized by Drago. However, he said he had been dismissed from the Health Link job in early 1999 as the result of publicity concerning a domestic violence complaint filed against him by McGary when they lived togethera charge that was later dropped. Taylor also said he was being treated for major depressive disorder and anxiety disorder, for which he was currently taking prescribed narcotic medications.[23] Because of this, he could not pass a pre-employment drug test and did not believe he could obtain full-time employment as a registered nurse. Taylor said if he failed a drug test, even because of a prescribed medication, he would lose his nursing license. By working as an independent contractor, he avoided the drug test process and any negative impact it might have on his license.
Taylor said he was still living with his ex-wife and two teen-age children and was paying her $300 per month per child for their support. Taylor said that his eighteen-year-old son was attending school full-time to get his GED and was not employed. In connection with his testimony, Taylor's 1999 Federal Income Tax return was submitted, showing his gross wages for 1999 were $22,213.[24] Taylor identified and discussed receipts showing his payments since the September 1999 hearing, although these receipts were not entered into evidence. These showed payments October 13, 1999, for $150; December 8, 1999, for $300; December 22, 1999, for $300; January 2, 2000, for $300; and *1166 February 5, 2000, for $300. Taylor also testified that he had made an additional $300 payment on March 1, 2000. He said he was no longer making enough money to pay the amounts ordered by the court for ongoing child support and payment toward the arrearages.

ANALYSIS
We address first Taylor's claim that he should have been given credit for the $300 per month he was paying in child support for his eighteen-year-old son, who was enrolled full-time in a GED program. A parent's support obligation includes education when the child to whom the support is due is a minor, or when that child is a major who is a full-time student in a secondary school, has not attained the age of nineteen, and is dependent upon either parent. See LSA-C.C. art. 230; LSA-R.S. 9:315.22. In Park v. Park, 93-0115 (La. App. 1st Cir.3/30/94), 634 So.2d 83, 86, this court held that attending a vocational-technical school on a full-time basis to obtain a high school equivalency diploma is sufficient to satisfy the requirement that the major child, who has not attained the age of nineteen, be enrolled as a full-time student in a secondary school. We stated, "A high school equivalency diploma is no less a secondary school education because it is pursued in a vocational-technical institution instead of a high school." Park, 634 So.2d at 86. Although the evidence in this case does not identify the type of institution being attended by Taylor's son, the emphasis in Park was not on the institution, but on the goal of attaining a high school diploma and the student's full-time pursuit of that course of study. Based on Taylor's uncontroverted testimony concerning his son's status, Taylor's contribution toward his son's support should have been considered, pursuant to the Guidelines, in computing the child support for Anissa.
Concerning Taylor's request for modification of his child support, having reviewed the evidence presented to the hearing officer and the district court, we conclude Taylor carried his burden of proving a change in his financial situation. He has gone from a position earning $48,000 per year when Anissa's child support was initially computed, to several part-time jobs adding up to 40 hours per week, but earning only about $2000 per monthhalf of his previous income. His testimony to this effect was corroborated by his 1999 income tax return showing total gross income of $22,213. There is no evidentiary support for the hearing officer's factual finding at the February 2000 hearing that Taylor was making $2000 per month in addition to his part-time work at Phases. Therefore, this finding is manifestly erroneous, and the computation of his child support obligation by the hearing officer, which was ultimately accepted by the district court, is not supported by the evidence.
Once Taylor established a change in his circumstances, the burden shifted to the Department to show why the support obligation should not be modified. However, the Department did not present evidence indicating Taylor was deliberately working beneath his potential or was voluntarily underemployed. On the contrary, the evidence indicated he had made numerous, but unsuccessful, job applications for full-time positions in his field.[25] A person shall *1167 not be deemed voluntarily unemployed or underemployed if the employment situation has resulted through no fault or neglect of that person. LSA-R.S. 9:315(C)(6)(b). Therefore, Taylor's child support obligation should have been reduced to reflect his changed financial circumstances, retroactive to the date of judicial demand, January 13, 2000. See LSA-R.S. 9:315.21(A) & (C).
Using the support schedule and worksheet in the Guidelines,[26] we have computed the appropriate child support, assuming Taylor's gross monthly income was $2000, making a $600 adjustment for the support of his other two children, and accepting McGary's financial information as reflected on the hearing officer's notes from February 2000.[27] Based on that calculation, Taylor's support obligation for Anissa should have been reduced to $318 per month, which is greater than a 25% change. See LSA-R.S. 9:311(C)(1). However, we do not know when Taylor's son attained the age of nineteen, at which time Taylor's support obligation should have been increased to $370 per month. Therefore, the case must be remanded to the district court to re-adjust the child support to account for this change.[28]
Although there is a statutory provision precluding the court from canceling accrued arrearages unless the Department has determined there is no reasonable possibility of collecting them, that provision does not preclude an adjustment to those arrearages as a result of a determination that the support obligation should have been reduced, and that therefore, some portion of those arrearages should never have accrued. Because there is no payment history in the record, no documentation of how the arrearages were computed, and no indication of when the support should have been re-adjusted from $318 per month to $370 per month, this court cannot make an appropriate adjustment to the arrearages to reflect the retroactive reduction in Taylor's child support obligation. Accordingly, upon remand of the case, the district court should have a hearing to obtain the necessary additional evidence, should compute and order the appropriate adjustments in the amount of the arrearages, and should also consider whether the monthly payments against those arrearages should be reduced.
Under the circumstances, we conclude that the finding of contempt of court was an abuse of discretion. To find a person guilty of constructive contempt, the court must determine that disobedience to the court's order for support is willful or is a deliberate refusal by the parent to perform an act which was within the power of the parent to perform. Lutke, 750 So.2d at 518. In this case, the hearing officer's factual findings as to Taylor's income were manifestly erroneous. Therefore, there was not a sufficient factual basis upon which the district court could have determined that payment of Anissa's child support obligation, plus the accumulated arrearages, *1168 was within Taylor's power to perform. Moreover, although such a determination may have been implicit in the hearing officer's decision to find Taylor in contempt, we do not believe it is sufficient to check off a box on a form in order to find a person in contempt of court. Such a finding requires a specific and detailed determination that the evidence demonstrates the parent's ability to comply with the court's order and the parent's deliberate refusal to do so.[29] Here, the only statement is that Taylor had not made a full payment since the previous hearing in September 1999. This falls short of sufficient justification. Therefore, we conclude that the court's finding that Taylor was in contempt of court was an abuse of discretion.

CONCLUSION
Based on the foregoing, we reverse the judgment of the district court finding Taylor in contempt of court. We amend the judgment to order a reduction in Taylor's child support obligation to $318 per month, retroactive to January 13, 2000. We remand for the district court to compute the timing of an upward adjustment of the support obligation to $370 per month, as a result of Taylor's son attaining the age of nineteen, plus any additional adjustment to account for Taylor's daughter attaining the age of majority. On remand, the district court should also compute the appropriate arrearages, taking these changes into consideration, and determine whether to adjust the monthly payments against those arrearages. All costs of this appeal, in the amount of $116.50, are assessed against the Department.
REVERSED IN PART, AMENDED IN PART, RENDERED IN PART, AND REMANDED.
NOTES
[1] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Child support is retroactive to the date of judicial demand. See LSA-R.S. 9:315.21. The hearing officer's notes reflect a credit for $1000 Taylor had voluntarily paid McGary for Anissa.
[3] Inexplicably, the record contains another rule for contempt filed July 15, 1999, which was set for hearing on September 10, 1999; it was continued at the September 3 hearing for lack of service.
[4] Like the other hearings conducted by the hearing officer, this hearing was not transcribed. The record contains only the notes of the hearing officer and two documents showing payments to Taylor by his employers for various periods during 1999. The compromise agreement was not introduced into evidence.
[5] The record contains no documentary evidence to establish the computation of these arrearages, and no one from the Department testified concerning the amounts paid by Taylor or the balance due.
[6] Again, there is no documentary evidence to establish the amount of the arrearages, and the hearing officer's notes do not indicate that any Department employee testified concerning these amounts.
[7] Portions of Title 46 were amended in 2001. See 2001 La. Acts, No. 564, § 1 and No. 859, § 1. This opinion refers to the text of the applicable statutes prior to these amendments.
[8] Portions of Louisiana Revised Statutes 9:315 et seq., including the Guidelines, were amended and reenacted by 2001 La. Acts, No. 1082. Because the changes apply only to actions filed after August 15, 2001, all references in this opinion are to the former version of those provisions, which are applicable to this case.
[9] Other than blood test results, the record of this hearing contains no documentary evidence to support any of the hearing officer's findings and recommendations. Apparently, the financial information was provided by the testimony of the parties; however, the hearing was not transcribed. Evidence from a later hearing suggests Taylor was employed by Health Link Home Care Services at this time.
[10] The record does not contain a copy of this court order. According to Taylor, the court also ordered him to pay his ex-wife $500 per month alimony.
[11] We note that in the subsequent proceedings, Taylor at no time contested the factual findings concerning paternity or his gross annual income when the initial child support was computed.
[12] The agreement was not introduced into evidence at the hearing.
[13] We note this was a correct determination, at least with respect to the arrearages, because accrued arrearages cannot be canceled unless the Department has investigated and determined they cannot be collected. See LSA-R.S. 46:236.1(I)(1); State ex rel. Young v. Jennings, 790 So.2d at 753.
[14] Taylor claimed he had lost his job at Health Link, but had been employed full-time at another health care facility through August 1999.
[15] A contradictory hearing should have been held by the judge concerning Taylor's objections to the hearing officer's findings of fact and law. See LSA-R.S. 46:236.5(C)(6). However, because the judgment was not appealed, it is a final judgment.
[16] The full name of the facility is not in the record; Taylor, Department employees, and the hearing officer referred to it throughout these proceedings as "Phases."
[17] These payments were not reduced by the court, but by agreement between Taylor and his ex-wife.
[18] We note that apparently there was no income assignment, probably because Taylor was working as an independent contractor and was no longer on anyone's payroll.
[19] The parties had stipulated to the fact that, were that employee called to testify, her testimony would be as summarized by Drago.
[20] Taylor generally referred to this home care work as "consulting."
[21] Taylor said these applications were to Advantage Nursing Services, Cross-Country Nursing, Memorial Home Health, and People's Home Health.
[22] These applications for registered nurse positions were to Charity Hospital in New Orleans, Medical Center in New Orleans, Lakeview Regional Medical Center, and St. Tammany Parish Hospital.
[23] A letter from his treating psychiatrist confirming his condition and treatment was introduced.
[24] There were no W-2 forms or other attachments to the tax return that was submitted into evidence, but Taylor was not cross-examined concerning the accuracy of this return and no contradictory evidence was introduced.
[25] While we have doubts concerning Taylor's belief that taking prescribed narcotic medications for depression precludes him from obtaining full-time employment as a registered nurse or jeopardizes his license if he were to fail a drug test on that account, there is no evidence that this belief is merely a subterfuge by Taylor to avoid his child support obligation. Cf. State, through Dep't of Social Services, Office of Family Support, ex rel. Seals v. Seals, 97-1508 (La.App. 4th Cir.10/29/97), 701 So.2d 746 (father lost his nursing license following a conviction on drug charges).
[26] See applicable version of LSA-R.S. 9:315.14 (support schedulecurrent version is LSA-R.S. 9:315.19) and LSA-R.S. 9:315.15 (worksheetcurrent version is LSA-R.S. 9:315.20).
[27] Although not documented, McGary testified in the district court hearing that her financial information shown there was accurate.
[28] Taylor testified in the March 3, 2000 hearing that his daughter was seventeen years old. On remand, the district court should also determine whether an additional adjustment needs to be made as a result of this child's reaching the age of eighteen.
[29] Cf. LSA-C.C.P. art. 225; Garrett v. Andrews, 99-1929 (La.App. 1st Cir.9/22/00), 767 So.2d 941 (trial court's failure to recite facts upon which judgment of contempt was based, either in writing or in open court, required reversal of finding of contempt).