CARTER, C.J.
 

 |2In this modification of custody and child support action, the father, Dr. Jimmy N. Ponder, Jr., sought modification of an existing consent judgment, asking for more visitation/physical custody time with his two-year-old son. He also requested that the mother, Renee M. Harang, make an accounting of the child support payments and that she establish a spendthrift trust with a portion of the child support payments. Ms. Harang also sought modification of the consent judgment, by requesting an increase in Dr. Ponder’s $5,000 per month basic child support obligation and a decrease in Dr. Ponder’s visitation/physical custody time with the child.
 

 After a three-day trial, the trial court found that modification of the custody arrangement was warranted and awarded shared joint custody to the parties with an alternating Friday-to-Friday weekly physical custody schedule and a detailed holiday schedule. The trial court further ordered that Ms. Harang continue to be designated as the domiciliary parent and ordered Dr. Ponder to pay an increased amount, $8,250 per month, in basic child support, plus 100% of the medical expenses and health insurance, 100% of the educational expenses, and 75% of the cost of any extracurricular activities. Additionally, the trial court denied Dr. Ponder’s request for an accounting and the establishment of a spendthrift trust. Both parties appealed. For the following reasons, we affirm the trial court judgment in part and vacate in part.
 

 FACTS AND PROCEDURAL HISTORY
 

 Dr. Ponder and Ms. Harang are the parents of JHP, who was born on December 18, 2006. Dr. Ponder and Ms. Harang were never married, and during JHP’s first seven months of life, he lived exclu
 
 *959
 
 sively with his mother. |sAt that time, JHP had very limited contact with his father. Dr. Ponder is a medical doctor, living and practicing medicine in Thibo-daux, Louisiana. Ms. Harang is a stay-at-home mother, living with JHP and her mother in Houma, Louisiana. A few days after JHP was born, Ms. Harang filed a petition seeking sole custody of JHP, child support from Dr. Ponder, and specified visitation rights for Dr. Ponder. After his initial pleadings, Dr. Ponder filed an amended answer and reconventional demand on March 22, 2007, requesting joint custody and the primary domiciliary parent designation. In the alternative, Dr. Ponder requested shared fifty-fifty joint physical custody of JHP and co-domiciliary status.
 

 At a hearing on July 8, 2007, the parties stipulated to a consent judgment, which was read into the record.
 
 [1]
 
 The consent judgment provided, in pertinent part, that Dr. Ponder and Ms. Harang were awarded joint custody of JHP, who was almost seven-months-old at the time of the stipulation. The consent judgment further designated Ms. Harang as the primary physical custodian and domiciliary parent and outlined specific visitation/physical custody in favor of Dr. Ponder, which was intended to be flexible and allowed for a gradual increase in time so that by January 2008, Dr. Ponder would have physical custody of JHP on alternating weekends from Thursday evening until Sunday evening and Thursday nights during the alternate week. A specific holiday and summer schedule was also outlined in the consent judgment. Additionally, the consent judgment ordered Dr. Ponder to pay $5,000 per month to Ms. Harang for basic child support, plus 100% of JHP’s medical/hospitalization insurance and all | uncovered medical expenses, 100% of any reasonable work-related day care expenses, and 100% of any mutually agreed upon extracurricular activity expenses for JHP.
 

 On September 80, 2008, Dr. Ponder filed a motion requesting increased visitation/physical custody time with JHP, who was almost two-years-old, as well as a request for an accounting from Ms. Har-ang of the child support payments and the establishment of a spendthrift trust with a portion of the $5,000 monthly child support payments for the future educational and/or medical needs of JHP. Shortly thereafter on October 31, 2008, Ms. Har-ang filed a separate motion for increased child support and decreased visitation/physical custody time for Dr. Ponder. The parties opposed each other’s motions, and each party asserted that there had been a material change in circumstances since the consent judgment was rendered, which entitled each of them to their respective requests.
 

 A three-day trial on the merits was held March 24-26, 2009, after which the trial court found that modification of the custody arrangement and child support was warranted. On May 26, 2009, the trial court signed a judgment awarding fifty-fifty shared physical custody of two-year-old JHP to the parties on an alternating Friday-to-Friday schedule, with a detailed schedule outlining an equal sharing of the holidays.
 
 [2]
 
 The trial court maintained Ms. Harang as the domiciliary parent, but it ordered that all medical, religious, and school decisions were to be mutually agreed upon by both parties. Further, the trial court denied Dr. Ponder’s requests to order Ms. Harang to account for the child support payments and to deposit a | sportion of the child support payments into a spendthrift trust. Additionally, the trial court increased the child support obli
 
 *960
 
 gation, ordering that Dr. Ponder pay Ms. Harang $8,250 per month for JHP’s basic child support, plus 100% of JHP’s medical insurance, 100% of JHP’s uncovered medical expenses, 100% of JHP’s educational expenses, and 75% of JHP’s extracurricular activities, which could be unilaterally decided by Ms. Harang.
 

 Ms. Harang moved for a new trial, which the trial court denied on July 23, 2009, and both parties timely filed separate appeals, each raising multiple assignments of error.
 
 [3]
 
 All of the parties’ alleged errors essentially challenge the trial court’s decision to modify custody and child support; we will discuss each of those issues and the related arguments separately.
 

 MODIFICATION OF CUSTODY
 

 Generally, the trial court is vested with broad discretion in deciding child custody cases. Great deference is accorded to the decision of the trial court, because it has a better opportunity to evaluate the credibility of witnesses.
 
 Martello v. Martello,
 
 06-0594 (La.App. 1 Cir. 3/23/07), 960 So.2d 186, 191. Every custody case must be considered within its own particular set of facts and circumstances.
 
 Major v. Major,
 
 02-2131 (La.App. 1 Cir. 2/14/03), 849 So.2d 547, 550. And the trial court is in the best position to ascertain the best interests of the child, which is the paramount consideration in determining child custody, given the unique set of circumstances involved in each case. LSA-C.C. art. 131;
 
 Evans v. Lungrin,
 
 97—0541 (La.2/6/98), 708 So.2d 731, 738;
 
 Major,
 
 849 So.2d at 550. Accordingly, the trial court’s determination regarding child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion.
 
 Major,
 
 849 So.2d at 550;
 
 Shaffer v. Shaffer,
 
 00-1251 (La.App. 1 Cir. 9/13/00), 808 So.2d 354, 357,
 
 writ denied,
 
 00-2838 (La.11/13/00), 774 So.2d 151.
 

 A trial court’s determination of a child’s best interests is usually based heavily on factual findings.
 
 Henry v. Henry,
 
 08-0689 (La.App. 1 Cir. 9/23/08), 995 So.2d 643, 645. It is well settled that an appellate court cannot set aside a trial court’s factual findings in the absence of manifest error or unless the findings are clearly wrong.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record clearly establishes that the fact finder is clearly wrong or manifestly erroneous.
 
 Stobart v. State, DOTD,
 
 617 So.2d 880, 882 (La.1993). If the trial court’s findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced it would have weighed the evidence differently had it been the trier of fact.
 
 Rosell,
 
 549 So.2d at 844.
 

 The nature of the original custody award dictates the burden of proof a party has when seeking to modify a prior permanent custody award. When the original custody decree is a stipulated or consensual judgment, wherein the parties consent to a custodial arrangement, any party seeking the modification of custody must prove that there has been a material change in circumstances (also referred to as a change in circumstances materially
 
 *961
 
 17affecting the welfare of the child) since the original decree, as well as prove that the proposed modification is in the best interest of the child.
 
 Cedotal v. Cedotal,
 
 05-1524 (La.App. 1 Cir. 11/4/05), 927 So.2d 433, 436.
 

 The parties in this case were subject to a stipulated joint custody decree, and both parties requested a change in physical custody (Dr. Ponder sought more physical time with JHP and Ms. Harang sought a reduction in the father’s physical time with JHP). Therefore, the burden of proof to change the consensual agreement regarding JHP’s physical custody fell on each party to show that (1) there had been a material change of circumstances affecting JHP’s welfare since the original custody decree was entered and (2) their particular proposed modification was in the best interest of JHP.
 

 We find no merit to Ms. Harang’s initial argument that neither party brought the issue of modifying custody before the trial court. To the contrary, both parties expressly requested a modification in the “visitation” time that Dr. Ponder was exercising under the joint custody plan implemented in the consent judgment. The parties’ use of the term “visitation” in then-requests to modify Dr. Ponder’s physical custody time and in the language of both judgments was misleading. The trial court also used the misleading term “visitation” in its oral reasons for judgment, as well as the judgment, when describing Dr. Ponder’s physical custody of JHP. But the parties have continuously shared joint legal custody of JHP since the rendering and signing of the consent judgment. The time that parents with joint legal custody share with their child is more properly described as a “physical” or “actual” custody allocation of a joint custody plan, rather than visitation. LSA-R.S. 9:335(A);
 
 Cedotal,
 
 927 So.2d at 436. |sThe typical joint custody plan will allocate time periods for physical custody between parents so as to promote a sharing of the care and custody of the child in such a way as to ensure the child of frequent and continuing contact with both parents.
 
 Evans v. Lungrin,
 
 708 So.2d at 737. Therefore, we find that the trial court did not err in considering the physical custody modification issue.
 
 [4]
 

 Additionally, we find that the trial court applied the proper burden of proof to modify the physical custody arrangement (whether a change in circumstances materially affecting JHP had occurred
 
 and
 
 whether the proposed modification was in the best interest of JHP) even though the trial court used the term “substantial” rather than “material” change in circumstances in its oral reasons for judgment. When ruling on Ms. Harang’s motion for new trial, the trial court clarified everything it had considered before ruling on the modification of physical custody, including the factors listed in LSA-C.C. arts. 132 and 134. Considering the record in its entirety, we are satisfied that the trial court applied the proper burden of proof before modifying the physical custody consent decree, and we therefore, find no merit to Ms. Harang’s assertion that the trial court legally erred in its application of the burden of proof.
 

 In the absence of an agreement, the trial court shall award custody to the parents jointly. LSA-C.C. art. 132. Joint custody determinations are governed by LSA-R.S. 9:335 which provides, in pertinent part, that:
 

 
 *962
 
 (A)(1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except lafor good cause shown. (2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents, (b) To the extent it is feasible and in the best interest of the child, physical custody of the [child] should be shared equally. [Emphasis added.]
 

 While “shared custody” is defined as “a joint custody order in which each parent has physical custody of the child for an approximately equal amount of time[,]” a joint custody arrangement does not necessarily require an equal fifty-fifty sharing of physical custody.
 
 See
 
 LSA-R.S. 9:315.9(A)(1);
 
 Martello,
 
 960 So.2d at 190-191. The trial court’s allocation of the physical time for each parent should focus on substantial time rather than strict equality of time, so as to assure that the child has frequent and continuing contact with both parents, and always keeping the paramount goal of reaching a decision which is in the best interests of the child.
 
 Martello,
 
 960 So.2d at 191;
 
 Ketchum v. Ketchum,
 
 39,082 (La.App. 2 Cir. 9/1/04), 882 So.2d 631, 636. Only if it can be shown that a fifty-fifty shared physical custody arrangement is feasible and in the best interest of the child, can such an order can be implemented.
 
 Stephens v. Stephens,
 
 02-0402 (La.App. 1 Cir. 6/21/02), 822 So.2d 770, 778. Each case will depend on the child’s age, the parents’ situations, and other factors relevant to that particular custody dispute.
 
 Brazan v. Brazan,
 
 93-2369 (La.App. 1 Cir. 6/24/94), 638 So.2d 1176, 1179. And every joint custody decree should include the designation of a domiciliary parent, except when there is an implementation order to the contrary or for other good cause shown. LSA-R.S. 9:335(B)(1).
 

 One of Dr. Ponder’s challenges to the trial court’s ruling is that the trial court erred in designating Ms. Harang as the domiciliary parent instead of awarding co-domiciliary status to both parents. However, the record |lf)reveals that while Dr. Ponder has been the primary financial supporter of JHP, Ms. Harang has been the primary caretaker for JHP throughout his entire life, and she has unilaterally made most of the decisions regarding medical and educational options for JHP. The trial court took into consideration Dr. Ponder’s desire to be involved in all major decisions for JHP, specifically including decisions regarding medical, religious, and educational matters, when it ordered that the parties must now mutually agree on such decisions. And the trial court awarded Ms. Harang sole responsibility for any decision regarding JHP’s extra-curricular activities. While Dr. Ponder indicated that he may have questioned some of the decisions made by Ms. Harang, he did not necessarily disagree with any of her decisions. He also testified that he had no complaints about Ms. Harang’s guidance and care of JHP. The parties had previously agreed that Ms. Harang was to be the designated domiciliary parent in the original implementation plan outlined in the consent judgment, and the record does not reveal a good cause for her removal. There is no evidence in the record that Ms. Harang acted inappropriately as the domiciliary parent. Based on these circumstances, we cannot find that the trial court abused its discretion or was manifestly erroneous in its decision to maintain Ms. Harang as the designated domiciliary parent.
 

 The primary consideration in our analysis of a child custody determination is always the best interest of the child. LSA-
 
 *963
 
 C.C. art. 131. To determine the best interest of the child for a feasible sharing arrangement under LSA-R.S. 9:335(A)(2)(b), the trial court must weigh and balance twelve nonexclusive factors that are enumerated in LSA-C.C. art. 134:
 

 |n(l) The love, affection, and other emotional ties between each party and the child;
 

 (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child;
 

 (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs;
 

 (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment;
 

 (5) The permanence, as a family unit, of the existing or proposed custodial home or homes;
 

 (6) The moral fitness of each party, insofar as it affects the welfare of the child;
 

 (7) The mental and physical health of each party;
 

 (8) The home, school, and community history of the child;
 

 (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference;
 

 (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party;
 

 (11) The distance between the respective residences of the parties; and
 

 (12)The responsibility for the care and rearing of the child previously exercised by each party.
 

 The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in LSA-C.C. art. 134, but should decide each case on its own facts in light of those factors. Moreover, the trial court is not bound to give more weight to one factor over another; and, when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented.
 
 Ketchum,
 
 882 So.2d at 636. The factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Further, in determining what the best interest of the child is in a change of custody case, courts must examine all relevant factors including stability of environment, standard of living each parent can provide and the prior history of the child’s custody.
 
 Ketchum,
 
 882 So.2d at 637. | ^Continuity and stability of environment are also important factors to consider in determining what is in the child’s best interest. A change from a stable environment should not be made absent a compelling reason.
 
 Id.
 

 With these principles in mind, we turn to the evidence presented at the trial on the modification of custody in this case. Since the parties were not married when JHP was born, Dr. Ponder had, very limited contact with JHP until the time of the consent judgment. Ms. Harang was always JHP’s primary caretaker, and she has not worked outside of her home so she could care for him. Ms. Harang lives with JHP and her mother in a two-bedroom, two-bathroom apartment, in which she shares a bedroom with JHP where he has a portable crib. Ms. Harang testified that her mother helps her care for JHP at times, and that he has a loving relationship
 
 *964
 
 with her parents. At the time of trial, JHP had never attended daycare or preschool, but he was enrolled to begin preschool three days a week in the fall of 2009.
 

 When JHP was almost seven months old, the consent judgment was rendered granting the parties joint custody. Dr. Ponder commenced exercising regular physical custody time that began slowly with a mere four hours once a week, but then gradually progressed to three full days and nights, Thursday through Sunday evenings, on alternating weeks, including one overnight visit on the alternate week. This schedule was in place from the time that JHP was one-year-old until the trial court rendered the modified custody judgment when he was almost two-and-a-half years old. During Dr. Ponder’s physical custody time, he cares for JHP alone at his house where JHP has his own bedroom. They regularly play outside and visit with Dr. Ponder’s sister and her two young children, who live close to Dr. Ponder’s residence. Dr. Ponder testified that JHP loves spending time 113with his cousins, his aunt, and his grandparents. Dr. Ponder arranged his work schedule so that he is off work during the time that JHP is at his house. Dr. Ponder stated that he rarely hires a babysitter, he usually takes JHP with him everywhere he goes, and he has handled a variety of situations while caretaking for JHP without ever having to call someone for help.
 

 The evidence presented to the trial court revealed that JHP is a loving, happy, typical two (now three)-year-old boy, and that both parents have developed a close and loving relationship with him. JHP is able to recognize and tell both parents that he loves them. Dr. Ponder testified that his bonding with JHP has drastically increased over time and that he would like to spend as much time as possible with JHP so their relationship can become even closer. Dr. Ponder stated that he felt his relationship with his son was just as important as Ms. Harang’s relationship with JHP, and he desired an equal week-to-week schedule for his physical custody time. Dr. Ponder testified that a week-to-week schedule would enable him to develop the most loving relationship possible with his son, and it would help alleviate the problems the parties have had in making up missed visitation time.
 

 Ms. Harang testified that she is opposed to the week-to-week schedule, because it would interfere with JHP’s established routine with her, and he would be in the care of someone other than her while Dr. Ponder was working. In fact, Ms. Harang requested less time for Dr. Ponder to have physical custody of JHP, because it would conflict with JHP’s preschool routine and because Dr. Ponder worked on some Fridays. Dr. Ponder clarified that he occasionally works on some Fridays, but not on the Fridays that JHP is in his physical custody. Dr. Ponder candidly acknowledged that his luwork schedule would be the biggest problem with the week-to-week custody schedule, but he was confident that he could easily make arrangements to care for JHP while he was working. Dr. Ponder believed that he would be able to adequately provide care for JHP while he was at work with the help of extended family and hired babysitters, and possibly Ms. Harang’s help as well, when JHP was not at preschool. Additionally, Dr. Ponder testified that on the weeks that JHP was living with him, he would alter his work schedule to the hours of 8:00 a.m. to 4:30 p.m. on Monday through Thursday so he would be available to care for JHP as much as possible while still maintaining his medical practice. Dr. Ponder also indicated that he would make sure that JHP attended the preschool program where he was enrolled, and that he supported Ms.
 
 *965
 
 Harang’s decision that JHP start preschool.
 

 After listening to three days of testimony, the trial court determined that Dr. Ponder had proven a material change in circumstances since the time of the consent judgment primarily because now that JHP was older, he and Dr. Ponder had developed a closer and more loving relationship. The trial court expressed that Dr. Ponder had fully embraced his fatherhood role since the original consent decree. The trial court, in its oral reasons for judgment, focused on JHP’s older age, emphasizing the significant difference between the infant and toddler stages of childhood, and recognized that JHP and Dr. Ponder currently enjoyed a substantially different, close, and loving relationship, which was very unlike the tentative, distant, and practically non-existent relationship that they had when JHP was an infant, at the time of the consent judgment. And in determining whether Dr. Ponder had proved that it was in JHP’s best interest to modify custody to |,.^shared fifty-fifty physical custody, the trial court found both parties to be equal on many factors listed in LSA-C.C. art. 134. The trial court concluded that both parents were loving, capable, and caring, with both having the capacity and disposition to give JHP love, affection, and guidance; that they both were capable of providing JHP with food, clothing, shelter, medical, and material needs; that both parties were morally fit; that they both were physically and mentally healthy; and that they both had been sharing responsibility for caring and rearing JHP while he was in their physical custody.
 

 The trial court was particularly struck by Dr. Ponder’s testimony regarding his sincere desire to spend more time with his son and that he had learned to appreciate his special time with his son, making it a priority in his life. The trial court discussed Dr. Ponder’s financial ability and capacity to care for JHP and provide a permanent, loving home with a separate bedroom and bathroom for JHP, while Ms. Harang shared a bedroom and bathroom in an apartment with JHP. Additionally, the trial court took into consideration that Ms. Harang had occasionally denied Dr. Ponder additional visitation time with JHP and she had not been as willing to facilitate, accommodate, or encourage extra or makeup visitation time for Dr. Ponder to spend with JHP. The trial court recognized that JHP had lived with his mother since his birth, but concluded that it was in JHP’s “best interest to expand his relationship with his father.”
 

 After reviewing the record in its entirety and the applicable jurisprudence, we conclude that the trial court did not abuse its discretion in finding that Dr. Ponder satisfied his burden of proving both a change in circumstances materially affecting JHP’s welfare and that JHP’s best 11fiinterests are served by modifying the joint custody decree to shared fifty-fifty physical custody, on a Friday-to-Friday schedule, with Ms. Harang designated as the domiciliary parent. We further find no manifest error in the trial court’s factual findings that were based upon evaluations of witness credibility. Therefore, we would affirm that portion of the trial court judgment modifying physical custody, as well as the trial court’s denial of Ms. Harang’s motion for new trial.
 

 MODIFICATION OF CHILD SUPPORT
 

 In addition to modifying the physical custody in this case, the trial court considered Ms. Harang’s request for an increase in Dr. Ponder’s $5,000 basic child support obligation due to an alleged substantial improvement in Dr. Ponder’s lifestyle and standard of living since the consent judgment had been rendered. Ms. Harang
 
 *966
 
 maintained that Dr. Ponder’s lifestyle had increased significantly, which was evidenced by his cash payment for a new million dollar home. Dr. Ponder denied any change in his lifestyle and testified at trial that the cash payment for his new home came from his savings. Dr. Ponder did not request any change in the basic child support obligation; instead, he asked that the trial court order Ms. Harang to make an accounting of the child support payments and to establish a spendthrift trust for the future educational and/or medical needs of JHP with a portion of the child support payments that she receives.
 

 After hearing all of the testimony and considering the evidence, the trial court found that an increase in the basic child support order was necessary because JHP was. entitled to share in the current income of his parents, and the trial court believed that the initial $5,000 child support award in the consent decree “was undervalued.” Therefore, the trial court |17ordered Dr. Ponder to pay an increased basic child support obligation of $8,250 per month, plus 100% of JHP’s health insurance, uncovered medical expenses, and educational expenses, and 75% of JHP’s extracurricular activities.
 

 On appeal, Dr. Ponder attacks the increased amount of the basic child support obligation, arguing that the trial court erred in increasing the award without proof of a material change in circumstances or proof that the basic financial needs of JHP had changed since the consent judgment was rendered. Dr. Ponder also contends that the trial court failed to consider the increased physical custody time that he will have with JHP under the modified fifty-fifty shared physical custody arrangement. Conversely, Ms. Harang contends that the trial court abused its discretion in failing to set the basic child support obligation at an even higher amount ranging from $10,000 to $11,350 per month, which is more in line with the current living expenses of Dr. Ponder.
 

 We first consider the accounting and spendthrift issues, concluding that the trial court did not abuse its discretion in denying Dr. Ponder’s requests. Dr. Ponder did not provide evidence of Ms. Harang’s expenditures for the six months immediately preceding the filing of his motion for the accounting, as required by LSA-R.S. 9:312(A). Thus, there was no evidence for the trial court to consider whether the child support payments had not been used to benefit JHP in the form of clothing, housing, food, toys, household furnishings, or recreation. Without proof of good cause for the accounting, the trial court did not err in denying the request. Ms. Harang testified that she uses the full amount of the $5,000 per month child support to care for JHP and to meet his needs. Without proof that the child support Inpayments were misused in some way or were not necessary for JHP’s support, we find that the trial court did not abuse its discretion in denying Dr. Ponder’s request that a portion of the monthly child support payment be placed in a spendthrift trust pursuant to LSA-R.S. 9:315.13(B)(2) and LSA-R.S. 9:315.1(C)(l)(b).
 

 Next, we address the issue of the child support modification. Generally, an award of child support is entitled to great weight and will not be disturbed on appeal absent an abuse of discretion.
 
 Campbell v. Campbell,
 
 95-1711 (La.App. 1 Cir. 10/10/96), 682 So.2d 312, 316. The statutory guidelines for calculating child support are set forth in LSA-R.S. 9:315 to LSA-R.S. 9:315.20. Deviations by the trial court from the child support guidelines are permissible when the combined adjusted gross income of the parties is not within the amounts shown on the schedule found in LSA-R.S. 9:315.19, and the trial court provides oral or written reasons for the
 
 *967
 
 deviation. LSA-R.S. 9:S15.1(B)(1) and (C)(1);
 
 Campbell,
 
 682 So.2d at 316. Deviations by the trial court shall not be disturbed on appeal absent a finding of manifest error. LSA-R.S. 9:315.17.
 

 Child support is a continuous obligation of both parents; children are entitled to share in the current income of both parents and should not be the economic victims of divorce or out-of-wedlock birth. LSA-R.S. 9:315(A). And if the combined adjusted income of the parties exceeds the highest amount provided in the schedule for child support guidelines, the trial court shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interests of the child and the circumstances of each parent as provided in LSA-C.C. art. 141. In no ease, however, may the amount awarded be less than the highest amount specified |1flin the schedule. LSA-R.S. 9:315.13(B)(1). The highest level of adjusted gross monthly income specified in the schedule is $30,000. At that level, for one child, the basic support amount is $2,653.
 
 See
 
 LSA-R.S. 9:315.19, as amended and re-enacted by Louisiana Act 585, § 1, 2008 Regular Session.
 

 The overriding factor in determining the amount of child support is the best interests of the child. The amount of support should be determined on a case-by-case basis. A parent’s ability to pay and the lifestyle that the child would have enjoyed if the parents were together are important considerations.
 
 Earle v. Earle,
 
 43,925 (La.App. 2 Cir. 12/3/08), 998 So.2d 828, 834,
 
 writ denied,
 
 09-0117 (La.2/13/09), 999 So.2d 1151. And a child should not be denied the opportunity of a certain lifestyle that would have been available if the child was born of a legal union between the parents.
 
 See Hector v. Raymond,
 
 96-972 (La.App. 3 Cir. 4/2/97), 692 So.2d 1284, 1287-1288,
 
 writ denied,
 
 97-1134 (La.6/13/97), 695 So.2d 978.
 

 Louisiana Civil Code article 141 also governs the award of child support, requiring that child support be determined based on the
 
 needs of the child,
 
 as measured by the standard of living enjoyed by a child while living with his intact family and upon the ability of each parent to pay. Furthermore, the standard for modification of a child support award is set forth in LSA-C.C. art. 142 and LSA-R.S. 9:311(A)(1). Louisiana Civil Code article 142 provides that:
 

 An award of child support may be modified if the circumstances of the child or of either parent materially change and shall be terminated upon proof that it has become unnecessary. [Emphasis added.]
 

 And LSA-R.S. 9:311(A)(1) provides that:
 

 An award for support shall not be modified unless the party seeking the modification shows a material change in [gpcircumstances of one of the parties between the time of the previous award and the time of the rule for modification of the award. [Emphasis added.]
 

 Thus in this case, as the party seeking modification of the child support obligation, Ms. Harang had the burden of proving that either she or Dr. Ponder or JHP had a material change in circumstances since the time of the previous award in the consent judgment.
 
 See Folse v. Folse,
 
 01-0946 (La.5/10/02), 818 So.2d 923, 925. What constitutes a change in circumstances is determined on a case-by-case basis and falls within the great discretion of the trial court.
 
 Id. (Citing Stogner v. Stogner,
 
 98-3044 (La.7/7/99), 739 So.2d 762, 770). On appeal, a trial court’s child support order will not be reversed except for abuse of discretion. However, as in any other case, on appellate review of a trial court’s factual findings, those findings of fact are subject to the manifest error/clearly wrong standard of review.
 
 *968
 

 State, Dept. of Social Services, Support Enforcement Services v. Taylor,
 
 00-2048 (La.App. 1 Cir. 2/15/02), 807 So.2d 1156, 1162.
 

 In its oral reasons, the trial court outlined its factual findings regarding Dr. Ponder’s adjusted gross income at the time of the consent judgment and at the time of trial, determining that Dr. Ponder’s earnings for 2006 were approximately 5.4 million dollars; his earnings for 2007 were approximately 5.3 million dollars; and his estimated earnings for 2008 were approximately 4 million dollars. We find no manifest error in those factual determinations. Based on those determinations, the trial court ordered Dr. Ponder to pay “child support[,] [commensurate] with your earnings.” Because the trial court believed that the $5,000 monthly child support awarded in the consent judgment was undervalued, the trial court decided that $8,250 per month would be more appropriate. The trial court noted in its oral reasons that Dr. |⅞1 Ponder’s monthly income clearly far exceeded the highest amount reflected in the Louisiana Child Support Guidelines.
 
 See
 
 LSA-R.S. 9:315.19. Therefore, the trial court had discretion to set the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent. LSA-R.S. 9:315.13(B)(1). Understood in the application of discretion is the realization that there is no universal mathematical formula that can be applied. In arriving at an award, the totality of the circumstances must be considered. As each case turns on the unique facts presented, the trial court’s reasons for its decision are necessary and helpful to the reviewing court.
 
 Verges v. Verges,
 
 01-0208 (La.App. 1 Cir. 3/28/02), 815 So.2d 356, 364,
 
 writ denied,
 
 02-1528 (La.9/20/02), 825 So.2d 1179.
 

 The question on appeal is whether the trial court abused its discretion when it increased the child support award in this case. We find that the modification of the basic child support award was an abuse of discretion, because Ms. Harang failed to prove a material change in circumstances for either party or the child as required by LSA-R.S. 9:311(A)(1) and LSA-C.C. art. 142. Our review of the evidence reasonably supports a finding that the financial circumstances of both parties remained basically the same since the time of the consent judgment. The evidence clearly reflected and the trial court reasonably found that any perceived change in Dr. Ponder’s estimated adjusted gross income for 2008 was directly affected by the cash outlay for his new home, as well as a new building, staff, supplies, and equipment for one of his medical facilities. Therefore, throughout the time period since the consent judgment was rendered and signed, Dr. Ponder’s income did not drastically change-the only thing that changed was the way Dr. Ponder 12?allocated his income. In fact, Dr. Ponder’s financial adviser and CPA, who happened to be Dr. Ponder’s father, testified that Dr. Ponder’s lifestyle/standard of living from year-to-year since JHP’s birth had been “pretty stable.” The trial court also acknowledged in the oral reasons that Dr. Ponder lives “a very frugal lifestyle” for the amount of money he earns. There was no evidence that Dr. Ponder’s lifestyle had changed since the rendering of the consent judgment. And there was absolutely no evidence that Ms. Harang’s or JHP’s monthly financial needs had changed or exceeded the original child support award. Thus, we conclude that Ms. Harang failed to prove a material change in circumstances justifying a modification of the child support award.
 

 The trial court emphasized that the reason it was ordering an increase in the child support award was because “the $5,000 was undervalued for the visitation schedule that was in place” at the time of the consent judgment, rather than on a finding
 
 *969
 
 that a material change in circumstances had occurred. However, the trial court’s reasons reveal that it had played a part in initially approving the $5,000 amount in the consent judgment, which was well above the highest amount specified in the statutory guidelines, and we find no evidence of a material change in circumstances for either party or the child since that time.
 
 [5]
 

 ^Additionally, the trial court made a general statement in the oral reasons for judgment that a child in JHP’s circumstances is “entitled to have a mother that has some benefits ... in the financial situation of a father earning four million dollars in a year, a mother who would likely not work[.] ... The [c]ourt is unaware of any other way but to give those funds directly to the mother of the child to have that benefit flow to the child.” The court went on to explain that it believed “a child in [JHP’s] circumstances, the mother would reside in a home where the child would have his own room, not a two-bedroom apartment[.] ... A child in [JHP’s] position would have a home in a nice neighborhood. A child in [JHP’s] position would have a mother who would drive a fairly nice car. To some degree, the mother will get the benefit of [JHP’s] father’s financial position.” We do not disagree that as a stay-at-home mother of a toddler, Ms. Harang will inevitably benefit from the child support that Dr. Ponder pays for JHP, but we question the emphasis that the trial court placed on the benefits flowing to Ms. Harang rather than to JHP. Further, these considerations would have been more proper in the context of the initial determination of the basic child support obligation in the consent judgment rather than in a determination for a modification of child support.
 
 [6]
 

 ^Absent any evidence in the record of a material change in circumstances of either parent or the child between the time of the consent judgment and the trial for modification of the child support award, we conclude that the trial court abused its discretion when it increased Dr. Ponder’s basic child support obligation. Therefore, we find it necessary to vacate the trial court’s modification of child sup
 
 *970
 
 port. We also conclude that because the record is devoid of evidence of JHP’s specific financial needs or evidence of whether the increased shared physical custody for Dr. Ponder will result in a greater financial burden on him and a lesser financial burden on Ms. Harang, we find that it is proper in this instance to reinstate the original $5,000 per month basic child support award that was initially agreed upon and ordered in the consent decree.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the trial court’s considered decree except for the cash award of $8,250 per month for basic child support. The basic child support award is vacated, resulting in the reinstatement of the original consent decree for the basic child support award of $5,000 per month. In all other respects the judgment is affirmed. Each party is to bear his or her own costs of this appeal.
 

 AFFIRMED IN PART; VACATED IN PART; AND ORIGINAL BASIC CHILD SUPPORT AWARD REINSTATED.
 

 GUIDRY and PETTIGREW, JJ., concur in the result.
 

 [1]
 

 . The trial court did not sign the consent judgment until a year later, on July 28, 2008.
 

 [2]
 

 . We take judicial notice of the fact that JHP is now three-years-old.
 

 [3]
 

 . We note that Dr. Ponder's order of appeal was granted prematurely before Ms. Harang's timely motion for new trial was disposed of; however, Dr. Ponder’s order of appeal became effective upon the denial of Ms. Har-ang's motion for new trial on July 23, 2009. LSA-C.C.P. art. 2087(D). Thereafter, Ms. Harang's order of appeal was timely granted on August 10, 2009.
 

 [4]
 

 . We also note that in any proceeding for child support, which was at issue in this case, either party may raise any issue relating to custody of or visitation with the child, or both. The trial court may hear and determine that issue, even if custody was not specifically pleaded.
 
 See
 
 LSA-R.S. 9:315.25.
 

 [5]
 

 . The Louisiana Supreme Court has emphasized the trial court's integral role as gatekeeper in the area of approving proposed stipulations for child support in consent judgments when deviations from the guidelines are warranted.
 
 See Stogner
 
 739 So.2d at 768. The record in this case does not contain any evidence concerning the circumstances under which the consent judgment was approved, but it does contain the transcript from the hearing where the stipulations were read into the record. Before the stipulations were read, there was an acknowledgment that the trial court was aware of the extensive pretrial work by the parties prior to reaching their agreement. And in its oral reasons for modifying custody and child support, the trial court explained that it was involved and had some degree of influence over the consent judgment. Without any further evidence, we cannot say that the trial court's initial approval of the stipulated amount of child support was an abuse of discretion.
 

 [6]
 

 . Final child support is to be determined based on the needs of the child, as well as the ability of the parents to provide support, without any focus on the benefit to the parents. LSA-C.C. art. 141. The trial court’s discretion in determining final child support includes consideration of a child's standard of living, as well as the child’s needs.
 
 Langley v. Langley,
 
 07-0754 (La.App. 4 Cir. 3/26/08), 982 So.2d 881, 885,
 
 writ denied,
 
 08-0873 (La.6/20/08), 983 So.2d 1274. Children are entitled to the same standard of living that they would enjoy if they lived with their father if their father’s financial circumstances are sufficient to permit this. When setting the amount of child support to be paid by a parent, the court should strive to maintain the lifestyle of the child, when possible, while considering the child’s reasonably proven expenses and the parent's ability to provide.
 
 Id.