882 So.2d 631 (2004)
Bridget Lyons KETCHUM, Plaintiff-Appellant
v.
Chad Daniel KETCHUM, Defendant-Appellee.
No. 39,082-CA.
Court of Appeal of Louisiana, Second Circuit.
September 1, 2004.
*634 Susan D. Scott, for Appellant.
Smith & Jacobs, APLC, by E. Charles Jacobs, for Appellee.
Before GASKINS, PEATROSS & DREW, JJ.
PEATROSS, J.
In this modification of custody action, the father, Chad Ketchum, sought modification of an existing Joint Custody Implementation Plan, or stipulated judgment, providing for joint custody of his two-year-old daughter, Katelin. After a hearing, the trial court found that modification of the custody arrangement was warranted and awarded shared custody with alternating week physical custody. The trial court further ordered that the mother, Bridget Lyons (Ketchum) Stanford, who was named domiciliary parent in the prior custody plan, be removed as domiciliary parent and that she and Chad be "co-domiciliary parents," provided that Chad remain married and moved to the area where Bridget and the child reside. Bridget now appeals. For the reasons stated herein, we reverse and remand.

FACTS
Bridget and Chad were married in 1999 and lived in Springhill, Louisiana. They separated in 2001 due to Chad's infidelity. Bridget was pregnant at the time of the separation and Katelin Ketchum was born in October 2001. Chad filed for final divorce and for shared custody of the baby in January 2002. Days later, Bridget filed for final divorce, custody and child support and asked for an injunction against Chad to stop harassing and threatening calls. She also asked for supervised visitation due to Chad's alleged erratic behavior and unstable emotional state. In March 2002, a Joint Custody Implementation Plan was approved by the trial court granting joint custody with Bridget as domiciliary parent and visitation in favor of Chad every other weekend, every Wednesday overnight, alternating holidays and two to three weeks in the summer. At that time, Chad was living in Sarepta with his parents and was traveling to work in Ashdown, Arkansas. Bridget, a middle school teacher, still lived in the former marital home in Springhill.
Chad married Kelly in February 2003, at which time he moved into Kelly's home in Shreveport. He continued to commute every day to work in Ashdown. In July 2003, after failed discussions with Bridget about reconciliation,[1] Chad filed suit to obtain equal physical custody of Katelin by alternating weeks of physical custody. He also sought to modify child support and for he and Bridget to be "co-domiciliary parents" instead of Bridget holding the domiciliary parent status. At trial, Chad indicated that he and Kelly were planning to move to the Springhill area depending on the court's finding regarding physical custody. *635 The court imposed a gradual scale of shifting physical custody to work the child into an alternating week arrangement. Specifically, Chad's period of physical custody was immediately increased to Wednesday through Monday every other week and was to increase one day every two months or so until, by June 1, Katelin would be on an alternating week living arrangement. The trial court further ruled that, if Chad was still married and had moved to the Springhill area by June 1, the parents would then become "co-domiciliary parents."
Apparently, Chad and Kelly did, in fact, move to Sarepta in April 2004. Bridget also remarried  to a man she had known since high school and had dated for more than a year and a half prior to the marriage.

DISCUSSION
On appeal, Bridget raises five assignments of error essentially challenging the trial court's findings that a change in circumstances materially affecting the welfare of the child had occurred warranting a modification of the custody plan to an equally shared arrangement of alternating weeks of physical custody was in Katelin's best interest. She argues that Chad failed to meet his burden of proof on either of those requirements and further submits that equally shared custody arrangements are not mandated by law, nor are they presumed to be in the child's best interest. Bridget also challenges her removal as domiciliary parent and the re-designation of "co-domiciliary parents."

Modification of custody
The nature of the original custody award dictates the burden of proof a party has when seeking to modify a prior permanent custody award. There are two types of custody awards. The first is a stipulated judgment, wherein the parties consent to a custodial arrangement. The second is a considered decree, which is rendered after the trial court has received evidence of parental fitness to exercise care, custody and control of a child. When the original custody decree is a stipulated judgment, the party seeking modification must prove that there has been a change in circumstances materially affecting the welfare of the child since the original decree and that the proposed modification is in the best interest of the child. White v. Kimrey, 37,408 (La.App.2d Cir.5/14/03), 847 So.2d 157, writ denied, 03-1943 (La.8/1/03), 849 So.2d 534, citing Evans v. Lungrin, 97-0541 (La. 2/6/98), 708 So.2d 731; Touchet v. Touchet, 36,881 (La.App.2d Cir.1/29/03), 836 So.2d 1149; Masters v. Masters, 33,438 (La.App.2d Cir.4/5/00), 756 So.2d 1196, writ denied, 01-3096 (La.12/7/01), 803 So.2d 975. See also Arbuckle v. Arbuckle, 36,616 (La.App.2d Cir.12/11/02), 833 So.2d 1119.
Generally, the determination by the trial court regarding child custody is entitled to great weight and should not be disturbed on appeal absent a clear abuse of discretion. Roberie v. Roberie, 33,168 (La.App.2d Cir.12/8/99), 749 So.2d 849; Warlick v. Warlick, 27,389 (La.App.2d Cir.9/29/95), 661 So.2d 706.
In the case sub judice, because the parties were subject to a joint stipulated custody decree, the burden of proof to change the agreement regarding Katelin's custody would, therefore, be on Chad to show that (1) there has been a material change of circumstances affecting the welfare of the child since the original custody decree was entered and (2) the proposed modification is in the best interest of Katelin. Joint custody determinations are governed by La. R.S. 9:335 which provides, in pertinent part, that:
(A)(1) In a proceeding in which joint custody is decreed, the court shall render *636 a joint custody implementation order except for good cause shown. (2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents. (b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
A joint custody arrangement does not necessarily require an equal sharing of physical custody. Ellinwood v. Breaux, 32,730 (La.App.2d Cir.3/1/00), 753 So.2d 977; Nichols v. Nichols, 32,219 (La.App.2d Cir. 9/22/99), 747 So.2d 120. The primary consideration should be substantial time rather than strict equality of time as mandated by the legislative scheme providing for joint custody of children. Ellinwood, supra; Boyd v. Boyd, 26,292 (La.App.2d Cir.12/7/94), 647 So.2d 414. As noted by the Ellinwood court, joint custody does not necessarily mean a 50/50 sharing of time. See also Nichols, supra. Instead, every child custody case is to be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. Nichols, supra. Each case will depend on the child's age, the parents' situations and other factors relevant to that particular custody dispute. Brazan v. Brazan, 93-2369 (La.App. 1st Cir.6/24/94), 638 So.2d 1176.
To determine the best interest of the child for a feasible sharing arrangement under La. R.S. 9:335(A)(2)(b), the court must weigh and balance those factors enumerated in La. C.C. art. 134, which may include the following:
(1) The love, affection, and other emotional ties between each party and the child;
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child;
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs;
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment;
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes;
(6) The moral fitness of each party, insofar as it affects the welfare of the child;
(7) The mental and physical health of each party;
(8) The home, school, and community history of the child;
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference;
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party;
(11) The distance between the respective residences of the parties; and
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. Moreover, the trial court is not bound to give more weight to one factor over another; and, when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Rogers v. Stockmon, 34,327 (La.App.2d *637 Cir.11/1/00), 780 So.2d 386. The factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. McIntosh v. McIntosh, 33,908 (La.App.2d Cir.8/31/00), 768 So.2d 219. Further, in determining what the best interest of the child is in a change of custody case, courts must examine all relevant factors including stability of environment, standard of living each parent can provide and the prior history of the child's custody. Roberie, supra.
Continuity and stability of environment are important factors to consider in determining what is in the child's best interest. Washkow v. Washkow, 33,965 (La.App.2d Cir.8/23/00), 765 So.2d 1210; Roberie, supra. A change from a stable environment should not be made absent a compelling reason. Roberie, supra.
With these principles in mind, we turn to the evidence presented at the hearing on the modification of custody in the present case. Initially, we note that Chad argues that his remarriage and relocation to the Springhill area constitute a change of circumstances sufficient to warrant modification of custody. Chad did remarry and, in fact, Bridget has also remarried.
Regarding the relocation, we note that Chad and Kelly had not yet relocated to the Springhill area at the time of the hearing and each testified that their relocation depended on the court's ruling on physical custody. Had the trial court denied the requested modification, Chad would not have moved to Springhill area to be closer to Katelin; rather, Chad and Kelly both testified that, in that event, they would probably move closer to Chad's employment in Ashdown, Arkansas. It is also noteworthy that, at the time Chad and Bridget agreed to the original custody arrangement set forth in the Joint Implementation Plan, Chad was living in the Springhill area. He moved to Shreveport upon his marriage to Kelly, almost a year after the original custody arrangement was entered. His return to the Springhill area, therefore, is not actually a change from the circumstances in existence at the time the original custody arrangement was entered.
Under the particular circumstances of this case, we decline to hold that the evidence presented regarding Chad's relocation constitutes a change in circumstances that materially affects the welfare of Katelin. Further, without establishing a bright line rule, we decline to hold, in this particular case, that Chad's remarriage alone constitutes a change in circumstance that materially affects Katelin's welfare so as to warrant the extreme change of physical custody ordered in this case. See Shaw v. Shaw, 30,613 (La.App.2d Cir.6/24/98), 714 So.2d 906, writs denied, 98-2414 and 2426 (La.11/20/98), 729 So.2d 556 and 558 (completion of school and new family bonds do not constitute material change of circumstances to justify modifying previous custody arrangement).
Our inquiry does not end, however, with the alleged change of circumstances. Assuming, arguendo, that there has been a sufficient change of circumstances, we find this record woefully lacking in evidence that the alternating week arrangement is in Katelin's best interest. We do not doubt Chad's sincerity in his desire to spend more time with his daughter, nor do we question his wife's willingness to assist him in his efforts to be a good father to Katelin. By all accounts, Chad and Kelly included, Bridget is an excellent mother. She has provided a stable and loving home for Katelin since birth. Katelin is happy, well-adjusted and secure in her current *638 custodial arrangement. Neither Chad nor Bridget expressed extreme dissatisfaction with the current custodial arrangement. For the most part, the testimony reveals that Chad and Bridget have worked well together handling minor changes in visitations and both have been fairly accommodating in this regard.
The only testimony supporting the assertion that the week-to-week arrangement is best for Katelin came from Chad, who testified that he wanted to spend more time with her so that he could "teach her things that her mother can't." On the other hand, Bridget testified that she was concerned about upsetting Katelin's present stability and she expressed strong reservation about Katelin's ability to adjust to separate households for a week at a time. Significantly, Bridget expressed well-founded concern over a child of such a young age being removed for a week at a time from her mother, who had been the child's stable, primary caregiver since the child's birth. Perhaps the most persuasive factor against the week-to-week arrangement in this case is that, during Chad's week of physical custody, Katelin will spend more time in daycare or in the care of persons other than her father. Both Chad and Kelly testified that Chad leaves home for his commute to work at 5:00 a.m. Kelly would be waking, feeding and dressing Katelin and taking her to daycare. Chad returns home from work at approximately 5:30 p.m. and either he or Kelly would pick Katelin up from daycare, whereas Bridget gets off work at 3:15 and can (and has for the last two years) picked Katelin up from daycare at that time. The net result is that Chad will see Katelin for a few hours each evening and the child will spend more hours in daycare or with Kelly. This is not in the child's best interest.
In summary, the record indicates that Katelin is thriving in her present environment and is happy there. Absent a compelling reason to upset her present stability, we find it in her best interest to continue the same. While we are cognizant of the wide discretion afforded a trial court in making custody determinations, we believe that it was an abuse of that discretion to drastically alter the physical custody of a stable, healthy, happy and well-adjusted two-year-old by ordering an arrangement whereby the child would be taken from her mother, who has been her primary caregiver since birth, every other week (for seven days at a time). In addition, we find no evidence in the record to suggest that spending more time in daycare or in the care of persons other than her father during periods of his physical custody would be in Katelin's best interest, especially when the child's mother is available to care for her.
The record also supports the conclusion that Bridget's marriage is stable, whereas there exist some questions regarding Chad's emotional stability concerning his break-up with Bridget and subsequent marriage to Kelly. There is no indication that spending time with Chad and Kelly has had a negative impact on the child; however, the evidence suggests that Bridget's home life is the more stable and permanent of the two at this time.
While courts strive "to the extent feasible" to give the parents equal time with the child, the paramount concern in all custody situations is the best interest of that child. As previously suggested, in this particular case, the young age of the child, the present and past living arrangement, the length of time Katelin has lived in her mother's stable home, maintaining continuity of the child's environment and the permanence of the family unit she enjoys (the home into which she was born and has lived since that date) all strongly *639 favor maintaining the status quo as far as Katelin's overnight custodial arrangement.
Having so held, we further find that Chad may be entitled to more visitation with Katelin and we express no reservations in awarding him more time with her, so long as the arrangement is in her best interest. An additional afternoon or evening visit with Katelin (perhaps from 5:30 p.m. to 7:30 p.m.) may be appropriate on one or more weekdays. In this way, the goal of substantial time with Chad can be achieved without sacrificing the stability and continuity of Katelin's present living arrangement. Accordingly, we reverse the decision of the trial court ordering an alternating week custodial arrangement. In addition, finding that the trial court is in a better position to fashion the specific modification schedule in light of the parents' current employment circumstances, etc., we remand the matter for further proceedings regarding additional visitation for Chad.

Domiciliary Parent Designation
In light of our findings discussed herein, we conclude that Bridget should not have been removed as domiciliary parent of Katelin. La. R.S. 9:335(B) requires the court to designate a domiciliary parent except when there is an implementation order to the contrary or for good cause shown. The parties agreed that Bridget was to be the primary domiciliary parent in the original implementation plan and there has been no good cause shown for her removal. There is no evidence in the record to suggest that Bridget has in any way failed to act appropriately as domiciliary parent; and, therefore, we see no reason to divest her of that status at this time. In addition, we note that, while a court can refuse to designate a domiciliary parent in an initial custody determination for good cause shown, we find no authority in the law for a designation of "co-domiciliary" parents.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed and the matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed 75 percent to Chad Ketchum and 25 percent to Bridget Lyons Stanford.
REVERSED AND REMANDED.
NOTES
[1] The record contains taped telephone conversations between Bridget and Chad wherein Chad states that he would come back to Bridget if she would agree to reconcile. Bridget submits that Chad's overtures to reconcile were numerous and came before and after he married Kelly. Chad maintains that he would not have cheated on or left Kelly to reconcile with Bridget, but that his statements to Bridget in this regard were made in an effort to get more time with Katelin.