HOLDRIDGE, J.
Lin this child custody dispute, the father, Ryan Distefano, appeals a judgment *439 in favor of the mother, Christina Nicole Distefano, which modified the parties’ joint custodial arrangement by designating the parties as co-domiciliary parents, with each parent having physical custody of the children on an alternating weekly basis. For reasons that follow, we affirm the judgment of the trial court.
FACTUAL AND PROCEDURAL HISTORY
The parties in this matter, Ryan Distefano and Christina Distefano, were married on November 26, 2002, and they had two children during their marriage: A.B.D., born April 26, 2005, and L.M.D., born November 28, 2007. On September 17, 2010, Ryan Distefano filed a petition for divorce, seeking among other things, that the parties be awarded joint custody of their minor children, that he be designated as the children’s domiciliary parent, and that the parties be awarded equal physical custody. On December 28, 2010, Christina Distefano filed an answer and reconventional demand, likewise seeking that the parties be awarded joint custody, that she be designated as the children’s domiciliary parent, and that Ryan Distefano be awarded periods of physical custody in accordance with his work schedule. A judgment of divorce was rendered and signed on January 18, 2012.
During the pendency of the divorce proceedings and thereafter, the parties shared equal physical custody of the children pursuant to a verbal agreement. On August 1 and 2, 2012, a trial was held on the issue of custody and by judgment signed on September 3, 2013, the trial court awarded the parties joint custody of the children, designated Ryan Distefano as the children’s domiciliary parent, and awarded Christina Distefano specific physical custodial periods consisting of every other weekend from Friday afternoon until Monday morning and every Wednesday |3evening, with slight modifications of the custodial periods during the summer and for holidays and birthdays (“the September 3, 2013 custody decree”).[2]
On March 26, 2014, Christina Distefano filed a motion to modify the parties’ custodial arrangement. She alleged that following the rendition of the September 3, 2013 custody decree, the children had “expressed grief over not being able to spend more time with their mother,” since she had been the primary care giver prior to that decree, and Ryan Distefano had been “wholly uncooperative in fostering the relationship between the minor children and their mother.” Christina Distefano also alleged that, “[i]n an effort to be closer to the minor children and out of fear due to the continued instability” the defendant had exhibited, she relocated to live in the same residential subdivision as Ryan Distefano. She further alleged that since the rendition of the September 3, 2013 custody decree, the custody arrangement had become “so deleterious to the minor children with the actions of [Ryan Distefano] and *440 the isolation from [Christina Distefano]” so as to warrant a modification of the custody-arrangement by designating Christina Distefano as the domiciliary parent and granting her equal physical custody, or alternatively, increasing her physical custodial time. Christina Distefano claimed that such a modification would “immensely benefit the mental and emotional well being of the minor children” and would significantly outweigh “any minimal damage that could occur as a result of said modification.”
After a trial on April 4, 2014, the trial court rendered judgment maintaining the award of joint custody; however, the trial court modified the September 3, 2013 |4custody decree by designating the parties as co-domiciliary parents and ordering the parties to share physical custody of the children on an alternating weekly (or equal basis), with slight modifications for holidays and special days. A judgment in accordance with the trial court’s ruling was signed on April 29, 2014, and it is from this judgment that Ryan Distefano now appeals.
On appeal, Ryan Distefano essentially claims that the trial court erred in modifying the previous considered custody decree because Christina Distefano failed to meet her evidentiary burden of proof.
LAW AND DISCUSSION
Every child custody case must be viewed in light of its own particular set of facts and circumstances. Major v. Major, 2002-2131 (La.App. 1st Cir.2/14/03), 849 So.2d 547, 550; Gill v. Dufrene, 97-0777 (La.App. 1st Cir.12/29/97), 706 So.2d 518, 521. The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, 738. In determining the best interest of the child, La. C.C. art. 134 enumerates twelve non-exclusive factors to be considered by the trial court, which include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
|fi(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The list of factors set forth in La. C.C. art. 134 is non-exclusive, and the determination as to the weight to be given *441 each factor is left to the discretion of the trial court. La. C.C. art. 134, comment (b), Revision Comments-1993. Thus, the trial court is in the best position to ascertain the best interest of the child given each uniqué set of circumstances. Accordingly, a trial court’s determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Major, 849 So.2d at 550.
In this case, and as in most child custody cases, the trial court’s determination was based heavily on factual findings. It is well settled that an appellate court cannot set aside a trial court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine |fithat the record establishes that the fact finder is clearly wrong or manifestly erroneous. Stobart v. State, DOTD, 617 So.2d 880, 882 (La.1993).
There is a distinction between the burden of proof needed to change a custody plan ordered pursuant to a considered decree and of that needed to change a custody plan ordered pursuant to a non-considered decree. See Evans, 708 So.2d at 738. A “considered decree” is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Major, 849 So.2d at 551. By contrast, a non-considered decree or uncontested decree is one in which no evidence is presented as to the fitness of the parents, such as one that is entered by default, by stipulation or consent of the parties, or is otherwise not contested. See Major, 849 So.2d at 552.
In this case, there is no dispute that the underlying custody decree — the September 3, 2013 custody decree — was a considered decree, as it was rendered following a trial wherein the trial court received evidence of parental fitness regarding Ryan and Christina Distefano’s ability to exercise care for their minor children. Once a considered decree of permanent custody has been rendered by a court, the proponent of the change bears the heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the. harm likely caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986); see also Mulkey v. Mulkey, 2012-2709 (La.5/7/13), 118 So.3d 357, 364-365.
Therefore, in order- to modify the custody plan, Christina Distefano had to prove, and the trial court had to find: (1) that a material change in circumstances had occurred since the rendition of the September 3, 2013 custody decree and (2) that the burden of proof set forth in Bergeron had been met, ie., that the continuation of the present custody plan was so deleterious to the children so as to justify a modification of the custody decree or that the harm likely to be caused by a change of environment was substantially outweighed by its advantages to the children. See Mulkey, 118 So.3d at 365.
*442 On appeal, Ryan Distefano argues that Christina Distefano failed to prove that there had been a material change in circumstances since the rendition of the September 3, 2013 custody decree. However, Christina Distefano submits that she satisfied this aspect of her burden of proof by establishing that since the rendition of the September 3, 2013 custody decree, she had relocated her residence to the same neighborhood as Ryan Distefano in an effort to make the logistics of rearing the children from separate homes as seamless as possible. Christina Distefano also submits that the evidence established that the minor child A.B.D. had been diagnosed with attention deficit disorder, A.B.D. had experienced a decrease in academic standing, and Ryan Distefano had “abused his ‘authority’ as the domiciliary parent.”
According to the record, at the time the September 3, 2013 judgment was rendered, the parties had been sharing physical custody of the children on an alternating weekly basis. Ryan Distefano had been residing in the same home for several years, which was located in the same community in Watson (Livingston Parish) where the children were attending school and church, where their friends were located, and where they had become involved in extra-curricular activities. On the other hand, Christina Distefano had moved approximately six times, and was contemplating another move to Zachary, which is located in the northern part of East Baton Rouge Parish. Thus, although the parties had been sharing equal physical custody of the children, Christina Distefano’s decision to move to Zachary rendered that arrangement unfeasible, as the parties were going to be living in two separate communities and school districts. See La. R.S. 9:335. A preview of the trial court’s reasons for judgment from the hearing that culminated in the September 3, 2013 custody decree reveals that the trial court’s decision to designate Ryan Distefano as the domiciliary parent and its allocation of physical custody to Christina Distefano was based heavily on this factual circumstance and its corresponding effect on the factors set forth in La. C.C. art. 134 for determining the best interest of the children.
The record further reveals that since the rendition of the September 3, 2013 custody decree, Christina Distefano moved into a home located in the same subdivision as Ryan Distefano’s home and as such, she now lives “three streets away” and less than a minute from Ryan Distefano. Ryan Distefano admitted that Christina Distefano’s move was “convenient” for their shared custody arrangement. Thus, when Christina Distefano sought a modification of custody, the parties were living in significantly closer proximity to each other than they were at the time of the September 3, 2013 custody decree. The trial court, noting its “extraordinary efforts” in the September 3, 2013 custody decree to make the physical custody allocation as “equal as possible” given that the parties were living in different communities, found that Christina Distefano’s move to Ryan Distefano’s neighborhood constituted a change that warranted a modification of the parties’ joint custody arrangement. Stated differently, her move constituted a material change in circumstances. After a thorough review of the record and considering the emphasis placed by the trial court on the factual circumstances surrounding the parties’ residences at the time of the rendition of the September 3, 2013 custody decree, we find the trial court’s factual finding that Christina Distefano’s move to Ryan Distefano’s neighborhood constituted a material change in circumstances since the rendition of the September 3, 2013 custody decree was reasonably supported by the record and was not clearly wrong.
*443 IflNext, we must determine whether the burden of proof set forth in Bergeron was met. On appeal, Ryan Distefano contends that Christina Distefano failed to prove that the continuation of the present custodial arrangement was “so deleterious” as to warrant a modification of the custody decree. However, Christina Distefano maintains that the evidence that Ryan Distefano refused to allow the children extra time to visit with her or to walk down the street to have dinner at her new home was “deleterious to the minor children’s mental well-being[.]” We agree with Ryan Distefano, as the record before us does not contain any evidence establishing that the continuation of the September 3, 2013 custody decree would be “deleterious” to the children. “Deleterious” means “unwholesome, psychologically or physically harmful.” Black’s Law Dictionary (9th ed.2009). Herein, the trial court evaluated the evidence at trial in light of the factors set forth in La. C.C. art. 134 for determining the best interest of the child and made a specific finding that the parties were equal with regard to all of the factors, except factor nine — the reasonable preference of the child — which the trial court found was inapplicable. The trial court also noted that Ryan Distefano had “probably done a pretty good job” as domiciliary parent. Thus, it cannot be said that the custodial arrangement set forth in the September 3, 2013 custody decree was unwholesome or psychologically or physically harmful for the children herein. Nonetheless, the trial court found that it was in the children’s best interest to modify the physical custody allocation of the parties’ joint custody plan.[3]
In Bergeron, the Louisiana Supreme Court recognized that there was a narrow class of cases where a modification of custody may be in a child’s best interest, even though the moving party may not be able to show that the present custody arrangement was “deleterious” to the child. See Mulkey, 118 So.3d at 365. Therefore, in order to ensure that a heavy burden of proof did not inflexibly prevent a modification of custody that was in a child’s best interest, while still protecting children from the detrimental effects of standards that were too liberal for changes in custody, the supreme court in Bergeron enunciated an alternative standard for the modification of a considered custody decree, ie., that the party seeking the change prove, by clear and convincing evidence, that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. See Bergeron, 492 So.2d at 1199-1200; Mulkey, 118 So.3d at 365. Thus, the supreme court’s decision in “Bergeron was not meant to tie the hands of a court when the facts and circumstances of a case and the needs of a child necessitate a change in custody.” Mulkey, 118 So.3d at 367.
Ryan Distefano contends that Christina Distefano’s request for a modification of custody would be a “drastic upheaval from the minor children’s primary caregiver” and the “custodial schedule the minor children had grown accustomed to.” However, Christina Distefano, pointing to testimony that Ryan Distefano refused to allow the children to visit with her unless it was “her weekend,” contends that the trial court correctly concluded that the advantages in modifying the September 3, 2013 custody decree substantially out *444 weighed any harm likely to be caused by a change in the environment. She further argues that any reasonable person would find that, when the opportunity presents itself for young children to be afforded the chance to spend more time with their mother, yet not be harmed by a shift in schedules or environment because the parents live in such close proximity to each other, there could only be advantages to the children to be derived from such a change.
According to the record, when the trial court rendered the September 3, 2013 custody decree, the trial court noted that the parties had been living in the same area and that they had shared week-to-week custody, which had “been working lnwelll.]” The trial court also made a specific finding that it was in the “children’s best interest to spend as much time as possible with both parents.” However, since the parties were going to be living in “two entirely different school districts and communities,” the trial court determined that it would be in the best interest of the children for Ryan Distefano to be designated as the domiciliary parent and that Christina Distefano be allocated specific physical custodial periods consisting of every other weekend from Friday afternoon until Monday morning and every Wednesday evening, with slight modifications of the custodial periods during the summer and for holidays and birthdays.
At the trial on April 4, 2014 to modify custody, Christina Distefano testified that the physical custodial schedule set forth in the September 3, 2013 custody decree provided her with 46% of the physical custodial time with the children and that her allocation was one week per year short of 50% of the physical custodial time.
We have thoroughly reviewed the entire record and find that the record does not contain any evidence of any harm to the children likely to be caused by a change in physical custody allocation. Although Ryan Distefano argues that the children had become accustomed to the physical custodial plan and that a change in the physical custodial schedule would be an upheaval from their primary caregiver, we note that the September 3, 2013 custodial decree was only in effect for approximately seven months when Christina Distefano filed her motion to modify custody. Further, the modification sought by Christina Distefano, and made by the trial court, provided Christina Distefano with physical custody of the children for essentially one more week per year than the September 3, 2013 custody decree. Therefore, the harm to the children by a change in the custody plan, if any, was certainly minimal.
| ^Although the trial court did not specifically articulate in its reasons for judgment the advantages to the children, after hearing all of the evidence and' having the benefit of seeing the parties and hearing their testimony, the trial court determined that the best interest of the children would be served by a modification of custody. Thus, the trial court implicitly concluded that there were substantial advantages to the children with a change in custody, including but not limited to the minor children being able to enjoy a relationship with both parents who are in close proximity to each other. Ryan Distefano has not demonstrated that this factual finding is clearly wrong.
Therefore, considering the particular facts and circumstances of this case, we find no error in the trial court’s determination that Christina Distefano met the burden of Bergeron by proving that there was little if any harm caused by a modification of the September 3, 2013 custody decree and that any harm would be substantially outweighed by the advantages to the children.
Lastly, on appeal, Ryan Distefano claims that Christina Distefano failed to prove *445 that it was in the children’s best interest to modify the custody arrangement. As previously set forth, the trial court’s reasons for judgment reflect that it considered all of the evidence presented in light of the factors set forth in La. C.C. art. 134 and found that it was in the children’s best interest to modify the custodial arrangement. Based on our review of the record, we cannot say that the trial court’s finding in this regard was manifestly erroneous.
Accordingly, since we have found no manifest error in the trial court’s determination that Christina Distefano satisfied her burden of proving both a material change in circumstances and, under Ber-geron, that any harm caused by a modification of the September 3, 2013 custody decree was substantially outweighed by its advantages to the children, we do not find that the trial court abused its vast discretion in modifying the parties’ joint custodial arrangement by | iaordering that the parties share physical custody of the children on an alternating weekly basis and by designating the parties as co-domiciliary parents.[4]
CONCLUSION
For all of the above and foregoing reasons, the April 29, 2014 judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellant, Ryan Distefano.
AFFIRMED.

. The September 3, 2013 judgment was amended by an April 3, 2014 judgment to provide that Christina Distefano would have "custodial periods” rather than "visitation” with the minor children. The amendment of the judgment in this regard was pursuant to La. C.C.P. art.1951, as it was an alteration of the phraseology of the judgment, not its substance. The trial court awarded Christina and Ryan Distefano joint custody of their children; visitation, as set forth in La. C.C. art. 136, applies only when a parent does not have custody or joint custody. The time that parents with joint legal custody share with their children is more properly described as physical custody allocation of a joint custody plan, rather than as visitation. See La. R.S. 9:335; Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, 737; Cedotal v. Cedotal, 2005-1524 (La.App. 1st Cir.11/4/05), 927 So.2d 433, 436.

. We recognize that in the trial court's oral reasons for judgment, it stated that it was going to modify "the visitation schedule.” However, as previously noted herein, the time that parents with joint legal custody share with their children is more properly described as a physical custody allocation of a joint custody plan, rather than as visitation. See footnote 2.

. We recognize that there is a split in the circuits of the courts of appeal in this state as to whether a court may designate the parties as “co-domiciliary” parents. See Molony v. Harris, 2010-1316 (La.App. 4th Cir.2/23/11), 60 So.3d 70, 82 (finding “no authority for the court to designate the parties as co-domiciliary parents"); Ketchum v. Ketchum, 39,082 (La.App. 2nd Cir.9/1/04), 882 So.2d 631, 639 (noting there is "no authority in the law for a designation of 'co-domiciliary' parents”); Stewart v. Stewart, 2011-1334 (La.App. 3rd Cir.3/7/12), 86 So.3d 148, 155 (finding "that a designation of co-domiciliary parents is within the trial court's authority pursuant to La. R.S. 9:335, if such a designation is in the best interest of the child”); St. Philip v. Montalbano, 2012-1090 (La.App. 4th Cir. 1/9/13), 108 So.3d 277, 279 n. 3 (noting that while it may be “legally erroneous to designate ‘co-domiciliary parents’ " under Molony, "an exception is recognized when the trial court issues a valid implementation order specifying the authority and responsibility of each parent with regard to the child”); see also McCaffery v. McCaffery, 2013-0692 (La.App. 5th Cir.4/9/14), 140 So.3d 105, 116, “writ denied, 2014-0981 (La.6/13/14), 141 So.3d 273,” and Silbernagel v. Silbernagel, 2010-0267 (La.App. 5th Cir.5/10/11), 65 So.3d 724, 730 (affirming trial court judgment designating the parties as co-domiciliary parents).
Although this Court has not expressly ruled on the issue, trial court decisions designating the parties as co-domiciliary parents have been affirmed. See Centanni v. Spradley, 2013-1851, p. 1 (La.App. 1st Cir.3/21/14) (unpublished) 2014 WL 1166192 (affirming the trial court’s judgment that, among other things, designated both parents as co-domiciliary parents depending on which party had physical custody at the time) and Remson v. Remson, 95-1951 (La.App. 1st Cir.4/4/96), 672 So.2d 409, 415, (affirming the trial court’s "order for co-domiciliary status of the parties” although the case has been superseded by statute on other grounds, as recognized in Stephens v. Stephens, 2002-0402 (La.App. 1st Cir.6/21/02), 822 So.2d 770, 775-777); but cf. Hoffpauir v. Hoffpauir, 2006-1923, p. 1 n. 2 (La.App. 1st Cir.2/9/07) (unpublished) 2007 WL 437769 (noting that “Louisiana law does not specifically recognize a status of ‘co-domiciliary’ parent” but that it is “lawful ... to not name a domiciliary parent in appropriate circumstances” under La. R.S. 9:335).
In this particular case, the designation by the court of co-domiciliaiy parents is in fact a designation that each party will have the primary decision-making authority when the children are in that parent's physical custody.