HANS J. LILJEBERG, Judge.
| {.Plaintiff appeals the trial court’s December 19, 2014 judgment, which modified the parties’ custody arrangement and awarded shared joint custody of the minor child to the parties, with the mother being designated as the domiciliary parent. For the following.reasons, we affirm the trial court’s judgment.

FACTS AND PROCEDURAL HISTORY

The parties, Andra Theriot Owens and Patrick Theriot, are the parents of SYT, who was born in July of 2002. The parties were married on November 17, 2000, and they separated in October of 2007. A judgment of divorce was rendered on February 10, 2010.[1]
On July 20, 2009, the parties entered into a consent judgment, providing for joint custody of SYT, with Andra being designated as the domiciliary parent. Patrick was awarded physical custody of SYT every other weekend from Friday evening until Sunday evening, every Wednesday after school until Thursday morning, and two non-consecutive full weeks each summer. The judgment also set forth an alternating holiday schedule.
| {¡On December 21, 2011, the parties entered into a second consent judgment, modifying the physical custody schedule. Pursuant to this judgment, Patrick was granted physical custody of SYT during the school year from 7:00 p.m. every Wednesday night until school on Thursday morning, every Friday after school until 3:00 p.m. on Saturday, and every Sunday from 7:00 p.m. until school on Monday morning.
On March 11, 2014, Andra filed a motion in the trial court requesting modification of the physical custody schedule, as well as other relief. In this motion, Andra asserted that there had been a change in circumstances to such a degree as to warrant modification of the December 21, 2011 consent judgment. She stated that the 2011 consent judgment was entered into when SYT was nine years old, and that she had matured since that time and needed a less *761 disruptive weekend schedule in order to participate in extra-curricular and social activities. In order to eliminate the custody exchanges during each weekend, Andra requested that Patrick be awarded physical custody of SYT every other Friday from after school until school on Monday morning, and every Wednesday from 7:00 p.m. until school on Thursday morning.
On July 1, 2014, Patrick filed his own motion seeking modification of the physical custody schedule, as well as other relief. In his motion, Patrick indicated that he agreed with Andra that a material change in circumstances had occurred since the parties entered into the consent judgment oh December 21, 2011, thereby warranting modification of the custody schedule. He further agreed with Andra’s assertion that SYT is now older and wants to participate in extra-curricular and social activities, which is difficult under the custody schedule in the 2011 consent judgment. Patrick requested that the parties be awarded joint and shared custody of SYT.
|40n July 18, 2014, the parties appeared before the domestic hearing officer, and he recommended that there be no modification of the custody or visitation schedules. He found that there had been no material change in circumstances to warrant modification of custody, and that the beneficiary of the “visitation,” Patrick, did not want a change in the visitation schedule. The hearing officer’s recommendations were made an interim judgment of the court. Both Andra and Patrick filed timely objections to the hearing officer’s recommendations and the interim order.
On November 10, 2014, this matter came before the trial judge for hearing. At the hearing, Andra, Patrick, and Patrick’s fian-cé, Wendy Barrilleaux, testified. At the conclusion of the hearing, the trial judge indicated that he would take the matter under advisement for two weeks and that he hoped that the parties would try during that time to find and agree to a resolution that would be the best for SYT.
The parties failed to reach an agreement during the time allowed by the trial judge. Accordingly, on December 19, 2014, the trial judge rendered a judgment, modifying the physical custody schedule and granting Patrick’s request for joint and shared custody, with Andra to remain as the domiciliary parent. The judgment provides for the following physical custody schedule:
For the first week, Pat shall have custody of [SYT] starting on Friday after school until Sunday at 7:00 P.M.; Andra Shall have custody of [SYT] from 7:00 P.M. Sunday until Wednesday after school, at which time Pat will have custody of [SYT] until Friday after school, at which time Andra will have custody until Sunday at 7:00 P.M. Pat will then have custody of [SYT] from 7:00 P.M. Sunday until Wednesday after school, at which time Andra will have custody until Friday after school. The schedule will then repeat itself starting with Pat having custody on Friday after school. This schedule shall remain in place during the summer time. Additionally, during the summer time, each parent shall be | ^entitled to two non-consecutive full weeks of custody of [SYT]. The holiday schedule set forth in the July 20, 2009, consent judgment shall remain in place.
Andra filed a Motion for New Trial, which was heard by the trial court on February 5, 2015, and denied. Andra now appeals.
LAW AND DISCUSSION
On appeal, Andra seeks reversal of the trial court’s judgment providing for joint and shared custody of SYT, and modifying SYT’s weekly physical custody schedule.
*762 Where a prior custody decree is a stipulated judgment, the party seeking to modify the existing custody arrangement must prove: 1) there has been a material change in circumstances affecting the welfare of the child since the original custody decree was entered; and 2) that the proposed modification is in the best interest of the child. Evans v. Lungrin, 97-541 (La.2/6/98), 708 So.2d 731, 738; Shaffer v. Shaffer, 00-1251 (La.App. 1 Cir. 9/13/00), 808 So.2d 354, 357, writ denied, 00-2838 (La.11/13/00), 774 So.2d 151. In the present case, the prior custody decree was a stipulated judgment, wherein the parties consented to the custodial arrangement. Thus, in order to modify custody to a joint and shared custody arrangement, Patrick was required to show a material change in circumstances affecting SYT’s welfare since the' 2011 consent judgment, and that modification of the custody arrangement was in SYT’s best interest.
In her first assignment of error, Andra argues that the trial court abused its discretion by finding that a change of circumstances materially affecting SYT’s welfare, and sufficient to warrant modification of SYT’s weekly schedule, had occurred since the rendition of the 2011 consent judgment. Specifically, she asserts that the trial court abused its discretion in finding that Patrick’s engagement and co-habitation with Wendy constitute a material change in circumstances | (¡affecting SYT’s welfare. In support of her position, Andra cites Ketchum v. Ketchum, 39,082 (La.App. 2 Cir. 9/1/04), 882 So.2d 631, in which the Second Circuit found that a father’s remarriage alone did not constitute a change in circumstances materially affecting the minor child’s welfare so as to warrant the change of custody ordered in that case.
First, we note that the trial judge did not consider Patrick and Wendy’s engagement and co-habitation as the only factor in determining whether or not there was a material change in circumstances affecting SYT’s welfare. Rather, the trial court found that “both Pat and Andra have proven a material change in circumstances based on [SYT’s] age and maturity since the last consent judgment regarding custody.” The trial court noted that the mid-weekend exchange of custody, pursuant to the 2011 consent judgment, inhibited SYT’s ability to make plans with her friends and to participate in certain events on the weekends. The trial court also noted that Andra has agreed that the weekend custody schedule has negatively affected SYT.
Both Andra and Patrick alleged in their motions that there was a material change in circumstances arising from SYT’s age and maturity. We note that Andra is the party who first filed a motion with the trial court seeking modification of the physical custody schedule for the weekends. In her motion, Andra asserted that there had been “a change in circumstances to such a degree as to warrant modification of the December 21, 2011 Consent Judgment with regards to the visitation schedule.” She stated that the 2011 consent judgment was entered into when SYT was nine years old, and that she had matured since that time and needed a less disruptive weekend schedule in order to participate in extracurricular and social activities. She further asserted that the custody schedule was placing “undo |7stress on [SYT] as she is beginning to resent having to split every weekend between the Parties.”
In Patrick’s motion requesting modification of custody, he stated that he agreed with Andra’s assertion that a material change in circumstances had occurred warranting modification of the 2011 consent judgment. Specifically, Patrick agreed that SYT had matured and that she wanted to participate in extra-curricular and *763 social activities, which had not been feasible under the 2011 consent judgment as it provided for a custody exchange every Saturday at 3:00 p.m.
The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Evans, 708 So.2d at 738. Each custody case must be considered within its own particular facts and circumstances, including the child’s age, the parents’ situations, and other factors relevant to that particular custody dispute. Harang v. Ponder, 09-2182 (La.App. 1 Cir. 3/26/10), 36 So.3d 954, 960, writ denied, 10-926 (La.5/19/10), 36 So.2d 219. A trial court’s determination of custody is entitled to great weight and will not be overturned on appeal absent a clear abuse of discretion. Shaffer, 808 So.2d at 357.
The parties agree that the weekend custody schedule under the 2011 consent judgment was not working well and was placing undo stress on SYT. Andra also stated that SYT was starting to resent having to split every weekend between the parties. Further, although Patrick and Wendy’s engagement and co-habitation may not alone be sufficient to constitute a material change in circumstances affecting SYT’s welfare, it is a factor to be considered along with SYT’s age and maturity. Based on the particular facts and circumstances of this case, we find no error in the trial court’s determination that there was a material change in circumstances sufficient to warrant modification of the custody schedule. This assignment of error is without merit.
|Jn her second assignment of error, Andra argues that the trial court abused its discretion by finding that shared joint custody was in SYT’s best interest and by modifying SYT’s weekly schedule, because the trial court’s analysis of the La. C.C. art. 134 factors for determining the best interest of the child was manifestly erroneous and inconsistent with the evidence presented at trial. Andra asserts that while the weekend schedule under the 2011 consent judgment was disruptive, modification of the weekday custody schedule was not warranted.
La. R.S. 9:335 provides that physical custody of the child should be shared equally, to the extent that it is feasible and in the best interest of the child. The typical joint custody plan will allocate time periods for physical custody between parents so as to promote a sharing of the care and custody of the child in such a way as to ensure the child of frequent and continuing contact with both parents. Evans, 708 So.2d at 737. Joint custody does not necessarily require an equal sharing of physical custody. Harang, 36 So.3d at 962; Stephens v. Stephens, 02-402 (La.App. 1 Cir. 6/21/02), 822 So.2d 770, 778. Only if it can be shown that a fifty-fifty shared physical custody arrangement is feasible and in the best interest of the child can such an order be implemented. Harang, 36 So.3d at 962. In determining what is in the best interest of the child, a court must weigh and balance the nonexclusive factors set forth in La. C.C. art. 134 as follows:
1) The love, affection, and other emotional ties between each party and the child;
2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child;
3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs;
4) The length of time the child has lived in a stable, adequate environ *764 ment, and the desirability of maintaining continuity of that environment;
t,5) The permanence, as a family unit, of the existing or proposed custodial home or homes;
6) The moral fitness of each party, insofar as it affects the welfare of the child;
7) The mental and physical health of each party;
8) The home, school, and community history of the child;
9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference;
10)The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party;
11) The distance between the respective residences of the parties; and
12) The responsibility for the care and rearing of the child previously exercised by each party.
When determining the best interest of the child, the trial court is not bound to give more weight to one factor over anoth.er; rather, the factors must be weighed and balanced in view of the evidence presented by the parties. Harang, 36 So.3d at 963; Ketchum, 882 So.2d at 636. The factors set forth in La. C.C. art. 134 are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Harang, 36 So.3d at 963.
In the present case, Andra argues that the trial court’s analysis of the La. C.C. art. 134 factors was manifestly erroneous and inconsistent with the clear and convincing evidence at trial. She contends that the trial court failed to give adequate consideration to several factors, including continuity and stability of environment, responsibility for the care and rearing of the child previously exercised by each party, permanence as a family unit of the existing and proposed custodial homes, the willingness and ability of each party to facilitate and |! 0encourage a close relationship between the child and each party, and the mental and physical health of each party.
In her argument that the trial court gave inadequate consideration to the continuity and stability of environment factors, Andra asserts that SYT’s weekly schedule has been the same for the past three years, and that she has become very well adjusted to this schedule, as shown by her above-average performance in school. An-dra contends that the trial court erroneously found that spending more time with Patrick in order to expand their relationship was a compelling reason to change SYT’s weekly schedule. She claims that there was no evidence that Patrick and SYT needed to expand their relationship, as they have always had frequent and continuing contact. She further argues that the trial court’s weekly physical custody schedule does not allow Patrick much more time with SYT than he already had, and that during Patrick’s physical custody of SYT on weekdays, SYT will be spending more time in the care of persons other than Patrick.
The evidence at trial revealed that the parties separated in 2007, and Patrick agreed that SYT could primarily live with Andra, because “daughters need their mothers.” Andra bought a house “around the comer” from Patrick in order for SYT to remain close to both parents. The testimony and evidence revealed that Patrick’s house and Andra’s house are not directly behind each other, but their backyards are close and SYT has been able to talk to her father over the fence. Although SYT has primarily lived with Andra, Patrick has *765 regularly exercised his right to physical custody of SYT each weekend, one night during the week, and holidays. Both parties have consistently and actively been involved in SYT’s life.
Andra notes that SYT earned above-average grades under the prior custody schedule, which should be maintained. However, the evidence at trial did not suggest a likelihood that this would change or that SYT’s grades would suffer | ^under the shared custody schedule as imposed by the trial court. Under the prior schedule, SYT would take the bus home every day and start doing her homework until Andra came home at 5:15 or 5:30 p.m. SYT would be home alone during this time, but her grandmother lives across the street and a few houses down, so she could contact her if needed. Under the new custody schedule, when Patrick has physical custody of SYT on weekdays, SYT would go to the homework room at school until Wendy, who is a sixth grade teacher at another school, could pick her up between 3:30 and 4:00 p.m. Wendy would then bring SYT home where SYT could finish her homework, and Wendy could assist with her homework.
Andra asserts that a shared custody arrangement would result in a nonparent, ie. Wendy, caring for SYT until Patrick gets home from work, and that this would not be in SYT’s best interest. The trial judge noted this argument in his reasons for judgment and considered it. He also considered that SYT has primarily resided with Andra and that Andra has had the majority of the responsibility for caring for and rearing SYT. The trial judge found that the factors of continuity and stability of environment and the responsibility for care of the child previously exercised by the parties arguably weighed against shared custody.
However, the trial judge believed that the factors against shared custody were outweighed by other factors in favor of joint shared custody. Specifically, the trial court found that the following factors weighed in favor of joint and shared custody: 1) the love, affection, and other emotional ties between each party and the child; 2) the capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child; 3) the capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs; 4) the permanence, as a family unit, of the existing or proposed custodial home or homes; 5) the moral fitness of each party, h ¿insofar as it affects the welfare of the child; 6) the mental and physical health of each party; 7) the home, school, and community history of the child; 8) the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party; and 10) the distance between the respective residences of the parties.
Every child custody case must be viewed within its own peculiar set of facts. Raney v. Wren, 98-869 (La.App. 1 Cir. 11/6/98), 722 So.2d 54, 56. The trial judge is in the best position to ascertain the best interest of the child given each unique set of circumstances. Id.
Although Andra argues that the trial court should not have modified the custody-schedule during the weekdays, the trial judge found that modification of both the weekend and weekday custody schedules was not only feasible, but also in the best interest of SYT. It is noted that SYT is close to both of her parents and that, under the custody schedule imposed by the trial court, SYT will not spend more than three consecutive days away from either parent during the school year.
*766 The trial court found that it was in the best interest of SYT for Andra and Patrick to have joint and shared custody of SYT. Considering the testimony, evidence, and the applicable law, we cannot say that the trial court abused its discretion by awarding joint shared physical custody of SYT to the parties or by modifying the weekly custody schedule.
We note that prior to this custody litigation, the parties worked together for a number of years to ensure that SYT would have a close and continuing relationship with each parent. We commend the parties for their actions in that regard, and we encourage them to work together under the new custody schedule and to always consider what is in the best interest of SYT.
liaDECREE
For the foregoing reasons, we affirm the trial court’s judgment dated December 19, 2014.

AFFIRMED

. Although the judgment of divorce is dated February 10, 2009, this appears to be a typographical error, as this case was not filed in the trial court until March 10, 2009.